# COPY

1  A. Raymond Hamrick, III (State Bar No. 93821)
2  Martin J. Barab (State Bar No. 47419)
   **HAMRICK & EVANS, LLP**
3  111 Universal Hollywood Drive, Suite 2200
   Universal City, California 91608
4  Telephone:  (818) 763-5292
   Facsimile:   (818) 763-2308
5
   Attorneys for Plaintiffs Braeburn
6  Holdings, Ltd. and 6287824 Canada,
   Inc., dba Reel Entertainment
7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10               CV09-02738  GW  (CWx)

11  BRAEBURN HOLDINGS, LLC. an Ohio      Case No.:
    Limited Liability Company; 6287824
12  CANADA, INC., DBA REEL              **COMPLAINT FOR:**
    ENTERTAINMENT, a Canadian
13  Corporation,                        **(1) BREACH OF CONTRACT;**
                                        **(2) MONEY HAD AND RECEIVED;**
14          Plaintiffs,                 **(3) UNJUST ENRICHMENT; AND**
                                        **(4) DECLARATORY RELIEF.**
15      v.
                                        **[DEMAND FOR JURY TRIAL]**
16  GENIUS PRODUCTS, LLC, a Delaware
    Limited Liability Company; and DOES 1
17  through 10, inclusive,

18          Defendants.

19

20      Plaintiffs BRAEBURN HOLDINGS, LTD. and 6287824 CANADA, INC.,

21  DBA REEL ENTERTAINMENT, hereby allege as follows:

22                          **I.**

23              **JURISDICTION AND VENUE**

24      1.    Jurisdiction of this Court over the subject matter of this action is

25  predicated on 28 U.S.C. §§ 1332 and under its supplemental jurisdiction pursuant to

26  28 U.S.C. § 1367.  The amount in controversy exceeds $75,000 exclusive of interest

27  and costs.

28      2.    Venue is proper in this District under 28 U.S.C. § 1391.  All defendants

-1-
COMPLAINT

1  reside in this District.

2  ## II.

3  ## THE PARTIES

4  3.   Plaintiff Braebun Holdings, LLC. ("Braebun"), was and is now, and at all

5  relevant times mentioned herein, an Ohio Limited Liability Company with its

6  principal place of business located in Toledo, Ohio.

7  4.   Plaintiff 6287824 Canada, Inc., dba Reel Entertainment ("Reel"), was

8  and is now, and at all relevant times mentioned herein, a Canadian corporation with its

9  principal place of business located in Montreal, Quebec, Canada.

10  5.   Plaintiffs are informed and believe and on that basis allege that

11  Defendant Genius Products, LLC ("Genius") was and is now, and at all times

12  mentioned herein, a Delaware Limited Liability Company, authorized to do business

13  and doing business in the County of Los Angeles, State of California.

14  6.   The true names and capacities, whether individual, corporate, associate or

15  otherwise, of Defendants DOES 1 through 10, inclusive, are presently unknown to

16  Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs are

17  informed and believe and thereon allege that each of the DOE Defendants was and is

18  either intentionally, negligently, or in some other manner, the cause or contributing

19  cause of, or otherwise responsible for, the damages suffered by Plaintiffs. Plaintiffs

20  will amend this Complaint to allege the true names and capacities of each DOE

21  Defendant, together with such allegations as may be appropriate, when their names

22  have been ascertained.

23  7.   Plaintiffs are informed and believe and thereon allege that at all times

24  mentioned in this Complaint, each of the DOE Defendants was the agent, servant,

25  employee, partner, joint venturer and/or franchisee of each of the remaining

26  Defendants herein, and was at all times acting within the course and scope of said

27  agency, service, employment, partnership, joint venture and/or franchise. Moreover,

28  Plaintiffs are informed and believe, and based thereon allege, that each act and

HAMRICK & EVANS, LLP

-2-
COMPLAINT

1    omission hereinafter alleged on the part of any one Defendant was done with the

2    approval and consent and was ratified by each of the remaining Defendants.

3                                            **III.**

4                            **GENERAL ALLEGATIONS**

5          8.     On or about May 10, 2006, Genius Products, Inc., to which Defendant

6    Genius is a successor in interest, entered into a Distribution Agreement with Grodfilm

7    Corporation ("Grodfilm"), a production company, pursuant to the terms of which,

8    Genius Products, Inc. agreed to distribute in the U.S. the DVD and videos of the

9    certain motion pictures.  A true and correct copy of the Distribution Agreement is

10   attached hereto and incorporated herein by reference as **Exhibit "A."**

11         9.     The Distribution Agreement was amended on May 12, 2008 specifically

12   referencing the following feature-length motion pictures, "including all elements and

13   versions of all of the foregoing: 'Hallowed Ground,' 'House Next Door,' 'Malibu

14   Shark Attack,' and 'Snow Demon.'"  A true and correct copy of the Amendment of

15   the Distribution Agreement is attached hereto and incorporated herein by reference as

16   **Exhibit "B."**

17         10.    Under the terms of the Distribution Agreement, Genius Products, Inc.

18   agreed to advance to Grodfilm "$250,000 payable as follows:

19              (i)     50% within 30 days after Delivery of Delivery Materials for such

20              Picture, and

21              (ii)    50% within 30 days after the initial Videogram release of such

22              Picture by Genius in the Territory..."

23   **A.    Allegations by Braeburn**

24         11.    Braeburn is the financier of the picture "Snow Demon" a/k/a "Yeti"

25   ("Snow Demon") having advanced Grodfilm funds to produce the "Snow Demon."

26         12.    On or about April 24, 2007, Grodfilm and Braeburn executed a Notice of

27   Irrevocable Authority whereby Braeburn was to be irrevocably paid the advance of

28   $250,000 "with such payments to be made in the amounts and at the times otherwise

HAMRICK & EVANS, LLP

1  payable to [Grodfilm]" by Genius.   A true and correct copy of the Notice of
2  Irrevocable Authority dated April 24, 2007 is attached hereto and incorporated herein
3  by reference as **Exhibit "C."**

4      13.   On or about April 24, 2007, Genius, Braeburn, and Grodfilm executed an
5  Acknowledgment of Notice of Irrevocable Authority whereby Genius agreed to and
6  promised to pay the Advance due to Grodfilm directly to Braeburn pursuant to the
7  terms of the Notice of Irrevocable Authority and the terms of the Distribution
8  Agreement.   A true and correct copy of the Acknowledgment of Notice of Irrevocable
9  Authority dated April 24, 2007 is attached hereto and incorporated herein by reference
10  as **Exhibit "D."**   There are no conditions or exceptions in either document limiting
11  Genius's duty to pay Braeburn.

12      14.   "Snow Demon" was fully delivered to Genius as of September 9, 2008.
13  Genius released "Snow Demon" on DVD on or about January 13, 2009 in all stores.
14  Genius has and continues to earn income on the release, exploiting the funds which
15  contractually had to be paid back to Braeburn.

16      15.   More than 180 days have passed since Delivery of Delivery Material,
17  "Snow Demon," and more than 30 days have passed since "Snow Demon" was
18  released to the public on DVD.

19      16.   Genius has failed to pay any sums to Braeburn.

20      17.   There is now due and owing $250,000 plus interest at 10% per annum on
21  the sum of $125,000 from September 9, 2008 and interest at the rate of 10% per
22  annum on the sum of $125,000 from January 13, 2009 plus attorney's fees and costs
23  incurred.

24      18.   Braeburn made multiple demands for payment of amounts outstanding
25  plus interest at 10% per annum.

26      19.   Pursuant to Section 20 of the Distribution Agreement, Braeburn, served
27  on Genius its demand for arbitration at the Los Angeles office of Judicial Arbitration
28  and Mediation Service ("JAMS").   JAMS has no authority and/or power to issue

HAMRICK & EVANS, LLP

1    Attachment Orders or Writs of Attachment.

2        20.    Braeburn intends to pursue arbitration as to the contract dispute.  In the

3    meantime, it seeks preliminary and permanent injunctive relief until such time as the

4    rights of the parties had been determined by arbitration.

5    **B.    Allegations by Reel**

6        21.    Reel is the financier of the picture "The House Next Door" a/k/a "Never

7    Cry Werewolf" ("Never Cry Werewolf") having advanced Grodfilm funds to produce

8    the "The House Next Door."

9        22.    On or about September 24, 2007, Grodfilm and Reel executed a Notice of

10   Irrevocable Authority whereby Reel was to be irrevocably paid the advance of

11   $250,000 "with such payments to be made in the amounts and at the times otherwise

12   payable to [Grodfilm]" by Genius.   A true and correct copy of the Notice of

13   Irrevocable Authority dated September 24, 2007 is attached hereto and incorporated

14   herein by reference as **Exhibit "E."**

15       23.    On or about September 24, 2007, Genius, Reel, and Grodfilm executed

16   an Acknowledgment of Notice of Irrevocable Authority whereby Genius agreed to

17   and promised to pay the Advance due Grodfilm directly to Reel pursuant to the terms

18   of the Notice of Irrevocable Authority and the terms of the Distribution Agreement.  A

19   true and correct copy of the Acknowledgment of Notice of Irrevocable Authority

20   dated September 24, 2007 is attached hereto and incorporated herein by reference as

21   **Exhibit "F."**   There are no conditions or exceptions in either document limiting

22   Genius's duty to pay Reel.

23       24.    "The House Next Door" was fully delivered to Genius as of September 4,

24   2008, and Genius released "The House Next Door" on DVD on or about September

25   15, 2008.   Genius has and continues to earn income on the release, exploiting the

26   funds which contractually had to be paid back to Reel.

27       25.    More than 180 days have passed since Delivery of Delivery Material,

28   "The House Next Door," and more than 30 days have passed since "The House Next

1  Door" was released to the public on DVD.

2      26.    Genius has failed to pay any sums to Reel.

3      27.    There is now due and owing $250,000 plus interest at 10% per annum on

4  the sum of $125,000 from September 4, 2008 and interest at the rate of 10% per

5  annum on the sum of $125,000 from September 15, 2008 plus attorney's fees and

6  costs incurred.

7      28.    Reel made multiple demands for payment of amounts outstanding plus

8  interest at 10% per annum

9      29.    Pursuant to Section 20 of the Distribution Agreement, Reel served on

10  Genius its demand for arbitration at the Los Angeles office of Judicial Arbitration and

11  Mediation Service ("JAMS").   JAMS has no authority and/or power to issue

12  Attachment Orders or Writs of Attachment.

13      30.    Reel intends to pursue arbitration as to the contract dispute.  However, it

14  seeks preliminary and permanent injunctive relief until such time as the rights of the

15  parties had been determined by arbitration.

16  **IV.**

17  **<u>FIRST CLAIM FOR RELIEF</u>**

18  **(BREACH OF CONTRACT)**

19  **(By Braeburn Against Defendants)**

20      31.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1

21  through 30 of this Complaint as if set forth in full herein.

22      32.    As alleged above, Genius, Braeburn, and Grodfilm executed an

23  Acknowledgment of Notice of Irrevocable Authority, where by Genius agreed:

24      "subject to the express reservations herein contained, to pay
   Braeburn Holdings, Ltd. (Braeburn") the Advance (as such term

25  is defined in the Agreement) for the Picture entitled "Snow
   Demon" at such time and in such amount as otherwise payable

26  to [Grodfilm] pursuant to the terms of the Agreement provided
   that [Grodfilm] shall remain liable to Genius to perform all of

27  its obligations pursuant to the Agreement, and provided further
   and subject to express condition that nothing herein contained

28  will obligate or reqire Genius to do or perform any act in
   derogation of or prejudicial to its own rights and interest under

HAMRICK & EVANS, LLP

said Agreement or which will adversely affect or minimize, or be in conflict with any lien, security or right, title and interest which Genius may have, or possess, or acquire under said Agreement, and that said rights of Genius under said Agreement shall at all times be prior and superior to the rights conveyed by [Grodfilm] to Braeburn under said Notice." *See* Exhibit "D."

33.     There are no conditions or exceptions in the Acknowledgment of Notice of Irrevocable Authority, the Notice of Irrevocable Authority, or the Distribution Agreement limiting Genius's duty to pay Braeburn.

34.     "Snow Demon" was fully delivered to Genius as of September 9, 2008, and Genius released "Snow Demon" on DVD on or about January 13, 2009.  Genius has and continues to earn income on the release, exploiting the funds which contractually had to be paid back to Braeburn.

35.     Braeburn performed all conditions, covenants and promises required of it pursuant to the Notice of Irrevocable Authority and Acknowledgment of Notice of Irrevocable Authority executed by the parties and Grodfilm, as described herein, except for those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of Genius.

36.     Grodfilm performed all conditions, covenants and promises required of it pursuant to the Notice of Irrevocable Authority and Acknowledgment of Notice of Irrevocable Authority executed by the parties and Grodfilm, as described herein, except for those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of Genius.

37.     Within the applicable statute of limitations period, Genius materially breached its obligations under the Acknowledgment of Notice of Irrevocable Authority, among other things:

(i)     failing and refusing to pay Braeburn the first fifty percent (50%) of the Advance in the amount of $125,000.00 within 30 days of September 9, 2008, the date of Delivery of "Snow

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

1   Demon;"

2   (ii)   failing and refusing to pay Braeburn the interest charges

3   at the rate of ten percent (10%) per annum from September 9,

4   2008;

5   (iii)   failing and refusing to pay Braeburn the second fifty

6   percent (50%) of the Advance in the amount of $125,000.00

7   within 30 days of January 13, 2009, the date of release of

8   "Snow Demon;" and

9   (iv)   failing and refusing to pay Braeburn the interest charges

10   at the rate of ten percent (10%) per annum from January 13,

11   2009.

12   38.   As a direct and proximate result of the foregoing breach of contract,

13   Braeburn has been damaged in an amount to be proven at trial, but which Plaintiffs are

14   informed and believe exceed $250,000, plus pre- and post-judgment interest at the

15   legal rate, plus consequential damages.

16   39.   Braeburn has already served on Genius its demand for arbitration and

17   intends to pursue arbitration as to the contract dispute.   In the meantime, it seeks

18   preliminary and permanent injunctive relief until such time as the rights of the parties

19   had been determined by arbitration.

20   **V.**

21   **SECOND CLAIM FOR RELIEF**

22   **(MONEY HAD AND RECEIVED)**

23   **(By Braeburn Against Defendants)**

24   40.   Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1

25   through 39 of this Complaint as if set forth in full herein.

26   41.   On or about September 9, 2008, Genius became indebted to Braeburn in

27   the sum of $125,000.00 for money had and received by Genius.

28   42.   On or about January 13, 2009, Genius became indebted to Braeburn in

1   the additional sum of $ $125,000.00 for money had and received by Genius.

2       43.    Neither the whole nor any part of this sum has been paid although

3   demand therefore has been made, and there is now due, owing, and unpaid the sum of

4   $250,000, with interest at the rate of 10% per annum on the sum of $125,000 from

5   September 4, 2008 and interest at the rate of 10% per annum on the sum of $125,000

6   from September 15, 2008

7       44.    As a direct and proximate result of the foregoing, Braeburn has been

8   damaged in an amount to be proven at trial, but which Plaintiffs are informed and

9   believe exceed $250,000, plus pre- and post-judgment interest at the legal rate, plus

10  consequential damages.

11      45.    Braeburn has already served on Genius its demand for arbitration and

12  intends to pursue arbitration as to the dispute.  In the meantime, it seeks preliminary

13  and permanent injunctive relief until such time as the rights of the parties had been

14  determined by arbitration.

### VI.

### THIRD CLAIM FOR RELIEF

### (UNJUST ENRICHMENT)

### (By Braeburn Against Defendants)

19      46.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1

20  through 45 of this Complaint as if set forth in full herein.

21      47.    As a result of the wrongful acts of Genius, it has been unjustly enriched

22  and benefited.  Genius derived and continues to derive a benefit from failing and

23  refusing to pay the amount it owes Braeburn under the terms of the Notice of

24  Irrevocable Authority and the Acknowledgment of Notice of Irrevocable Authority.

25      48.    As such, Genius is under an obligation to pay Braeburn forthwith, the

26  entire amount by which it has been unjustly enriched of $250,000, plus pre- and post-

27  judgment interest at the legal rate, plus consequential damages.

28      49.    Braeburn has already served on Genius its demand for arbitration and

HAMRICK & EVANS, LLP

intends to pursue arbitration as to the dispute.  In the meantime, it seeks preliminary and permanent injunctive relief until such time as the rights of the parties had been determined by arbitration.

## VII.

## FOURTH CLAIM FOR RELIEF

## (DECLARATORY RELIEF)

## (By Braeburn Against Defendants)

50.     Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 through 49 of this Complaint as if set forth in full herein.

51.     An actual controversy has arisen and now exists between Braeburn and Genius concerning their respective rights as follows:

> (i)     Braeburn contends, and Genius denies, that Genius owes Braeburn the first fifty percent (50%) of the Advance in the amount of $125,000.00 as of 30 days of September 9, 2008, the date of Delivery of "Snow Demon;"

> (ii)     Braeburn contends, and Genius denies, that Genius owes Braeburn the interest charges at the rate of ten percent (10%) per annum from September 9, 2008;

> (iii)     Braeburn contends, and Genius denies, that Genius owes Braeburn the second fifty percent (50%) of the Advance in the amount of $125,000.00 as of 30 days of January 13, 2009, the date of release of "Snow Demon;" and

> (iv)     Braeburn contends, and Genius denies, that Genius owes Braeburn the interest charges at the rate of ten percent (10%) per annum from January 13, 2009;

52.     Braeburn desires a judicial determination of its rights and a declaration as to the foregoing.

53.     A judicial declaration is necessary and appropriate at this time under the

HAMRICK & EVANS, LLP

1   circumstances.

2       54.   Absent such a judicial declaration at this time, Braeburn may be forever

3   deprived of their right to know whether Genius owes Braeburn any further

4   obligations.

5       55.   As a result of the foregoing, Braeburn suffered detriment and damages in

6   an amount to be proven at trial and believed to be in excess of the jurisdictional limits

7   of this Court.

8       56.   Braeburn has already served on Genius its demand for arbitration and

9   intends to pursue arbitration as to the contract dispute. In the meantime, it seeks

10  preliminary and permanent injunctive relief until such time as the rights of the parties

11  had been determined by arbitration.

### VIII.

### FIFTH CLAIM FOR RELIEF

### (BREACH OF CONTRACT)

### (By Reel Against Defendants)

16      57.   Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1

17  through 30 of this Complaint as if set forth in full herein.

18      58.   As alleged above, Genius, Reel, and Grodfilm executed an

19  Acknowledgment of Notice of Irrevocable Authority, where by Genius agreed:

> "subject to the express reservations herein contained, to pay [Reel] the Advance (as such term is defined in the Agreement) at such time and in such amount as otherwise payable to [Grodfilm] pursuant to the terms of the Agreement provided that [Grodfilm] shall remain liable to Genius to perform all of its obligations pursuant to the Agreement, and provided further and subject to express condition that nothing herein contained will obligate or reqire Genius to do or perform any act in derogation of or prejudicial to its own rights and interest under said Agreement or which will adversely affect or minimize, or be in conflict with any lien, security or right, title and interest which Genius may have, or possess, or acquire under said Agreement, and that said rights of Genius under said Agreement shall at all times be prior and superior to the rights conveyed by [Grodfilm] to [Reel] under said Notice." *See* Exhibit "F."

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

59.     There are no conditions or exceptions in either the Acknowledgment of Notice of Irrevocable Authority or the Distribution Agreement limiting Genius's duty to pay Reel.

60.     "The House Next Door" was fully delivered to Genius as of September 4, 2008, and Genius released "The House Next Door" on DVD on or about September 15, 2008.   Genius has and continues to earn income on the release, exploiting the funds which contractually had to be paid back to Reel.

61.     Reel performed all conditions, covenants and promises required of it pursuant to the Notice of Irrevocable Authority and Acknowledgment of Notice of Irrevocable Authority executed by the parties and Grodfilm, as described herein, except for those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of the Genius.

62.     Grodfilm performed all conditions, covenants and promises required of it pursuant to the Notice of Irrevocable Authority and Acknowledgment of Notice of Irrevocable Authority executed by the parties and Grodfilm, as described herein, except for those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of the Genius.

63.     Within the applicable statute of limitations period, Genius materially breached its obligations under the Acknowledgment of Notice of Irrevocable Authority, among other things:

> (i)     failing and refusing to pay Reel the first fifty percent (50%) of the Advance in the amount of $125,000.00 within 30 days of September 4, 2008, the date of Delivery of "The House Next Door;"
>
> (ii)    failing and refusing to pay Reel the interest charges at the rate of ten percent (10%) per annum from September 4, 2008;
>
> (iii)   failing and refusing to pay Reel the second fifty percent (50%) of the Advance in the amount of $125,000.00 within 30

days of September 15, 2008, the date of release of "The House Next Door;" and

(iv)    failing and refusing to pay Reel the interest charges at the rate of ten percent (10%) per annum from September 15, 2009.

64.    As a direct and proximate result of the foregoing breach of contract, Reel has been damaged in an amount to be proven at trial, but which Plaintiffs are informed and believe exceed $250,000, plus pre- and post-judgment interest at the legal rate, plus consequential damages.

65.    Reel has already served on Genius its demand for arbitration and intends to pursue arbitration as to the contract dispute.  In the meantime, it seeks preliminary and permanent injunctive relief until such time as the rights of the parties had been determined by arbitration.

## IX.

## SIXTH CLAIM FOR RELIEF

## (MONEY HAD AND RECEIVED)

## (By Reel Against Defendants)

66.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 through 30 and 57 through 65 of this Complaint as if set forth in full herein.

67.    On or about September 4, 2008, Genius became indebted to Reel in the sum of $125,000.00 for money had and received by Genius.

68.    On or about September 15, 2008, Genius became indebted to Reel in the additional sum of $125,000.00 for money had and received by Genius.

69.    Neither the whole nor any part of this sum has been paid although demand therefore has been made, and there is now due, owing, and unpaid the sum of $250,000, with interest at the rate of 10% per annum on the sum of $125,000 from September 4, 2008 and interest at the rate of 10% per annum on the sum of $125,000 from September 15, 2008

70.    As a direct and proximate result of the foregoing, Reel has been damaged

HAMRICK & EVANS, LLP

1  in an amount to be proven at trial, but which Plaintiffs are informed and believe

2  exceed $250,000, plus pre- and post-judgment interest at the legal rate, plus

3  consequential damages.

4    71.   Reel has already served on Genius its demand for arbitration and intends

5  to pursue arbitration as to the dispute.   In the meantime, it seeks preliminary and

6  permanent injunctive relief until such time as the rights of the parties had been

7  determined by arbitration.

8  **X.**

9  **SEVENTH CLAIM FOR RELIEF**

10  **(UNJUST ENRICHMENT)**

11  **(By Reel Against Defendants)**

12    72.   Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1

13  through 30 and 57   through 71 of this Complaint as if set forth in full herein.

14    73.   As a result of the wrongful acts of Genius, it has been unjustly enriched

15  and benefited.   Genius derived and continues to derive a benefit from failing and

16  refusing to pay the amount it owes Reel under the terms of the Notice of Irrevocable

17  Authority and the Acknowledgment of Notice of Irrevocable Authority.

18    74.   As such, Genius is under an obligation to pay Reel forthwith, the entire

19  amount by which it has been unjustly enriched of $250,000, plus pre- and post-

20  judgment interest at the legal rate, plus consequential damages.

21    75.   Reel has already served on Genius its demand for arbitration and intends

22  to pursue arbitration as to the dispute.   In the meantime, it seeks preliminary and

23  permanent injunctive relief until such time as the rights of the parties had been

24  determined by arbitration.

25  //

26  //

27  //

28  //

HAMRICK & EVANS, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAMRICK & EVANS, LLP

# XI.

## NINTH CLAIM FOR RELIEF

### (DECLARATORY RELIEF)

### (By Reel Against Defendants)

76.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 through 30 and 57 through 75 of this Complaint as if set forth in full herein.

77.    An actual controversy has arisen and now exists between Reel and Genius concerning their respective rights as follows:

(i)    Reel contends, and Genius denies, that Genius owes Reel the first fifty percent (50%) of the Advance in the amount of $125,000.00 as of 30 days of September 4, 2008, the date of Delivery of "The House Next Door;"

(ii)    Reel contends, and Genius denies, that Genius owes Reel the interest charges at the rate of ten percent (10%) per annum from September 4, 2008;

(iii)    Reel contends, and Genius denies, that Genius owes Reel the second fifty percent (50%) of the Advance in the amount of $125,000.00 as of 30 days of September 15, 2008, the date of release of "The House Next Door;" and

(iv)    Reel contends, and Genius denies, that Genius owes Reel the interest charges at the rate of ten percent (10%) per annum from September 15, 2008;

78.    Reel desires a judicial determination of its rights and a declaration as to the foregoing.

79.    A judicial declaration is necessary and appropriate at this time under the circumstances.

80.    Absent such a judicial declaration at this time, Reel may be forever deprived of their right to know whether Genius owes Reel any further obligations.

rights of the parties had been determined by arbitration.

**WHEREFORE**, Plaintiffs pray for judgment against Genius, as follows:

1.  For general, compensatory and consequential damages in an amount to be proven at trial, including allowable legal interest on the sum according to proof, in excess of $500,000;

2.  For an attachment order against Genius, to be followed by judicial issuance of a Writ of Attachment;

3.  For punitive damages to be proven at trial;

4.  For costs of suit herein;

5.  For allowable attorney fees;

6.  For a judicial determination of Plaintiffs' rights; and

7.  For such other and further relief as the Court deems proper.

DATED:  April 20, 2009                    HAMRICK & EVANS, LLP


By: _____
A. RAYMOND HAMRICK, III
MARTIN J. BARAB
Attorneys for Plaintiffs Braeburn
Holdings, Ltd. and 6287824 Canada,
Inc., dba Reel Entertainment

HAMRICK & EVANS, LLP

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a trial by jury of any issue triable of right by a jury.

3

DATED:  April 20, 2009                    HAMRICK & EVANS, LLP

4

5

By: _____

6

A. RAYMOND HAMRICK, III
MARTIN J. BARAB

7

Attorneys for Plaintiffs Braeburn
Holdings, Ltd. and 6287824 Canada,
Inc., dba Reel Entertainment

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAMRICK & EVANS, LLP

# EXHIBIT "A"

## DISTRIBUTION AGREEMENT

THIS AGREEMENT ("Agreement") is dated as of May 10, 2006, and is entered into between Genius Products, Inc. ("Genius"), and Grodfilm Corporation, 6464 Sunset Boulevard, Suite 800, Hollywood, California 90028 ("Licensor"). This Agreement consists of the following material terms ("Deal Terms") along with the Standard Terms and Conditions attached hereto and incorporated herein ("Standard Terms"). All capitalized terms not defined in the Deal Terms are defined in the Standard Terms. The Deal Terms are:

1. Pictures: During the Agreement Term, Genius will have the right of first refusal, in its sole discretion, to the exclusive Videogram, Digital, Television and Theatrical rights ("Rights Granted") with respect to all motion pictures to be produced by Licensor, or on behalf of Licensor where Licensor controls the rights to the motion picture ("Licensor Programs"), which shall not be less than [number] motion pictures each year of the Agreement Term commencing upon the date of this Agreement. Licensor shall give Genius written notice of any such Licensor Program(s) ("Notice"), and Genius shall have ten (10) business days from receipt of such Notice ("Notice Period") to elect in writing to include such Licensor Program(s) under this Agreement (each included Licensor Program will be a "Picture"). Licensor grants Genius the exclusive Rights Granted in each Picture during each Picture's respective Picture Term. Genius agrees to elect to include a minimum of four (4) Licensor Programs as Pictures under this Agreement ("Minimum Commitment") each year of the Agreement Term commencing upon the date of this Agreement ("Contract Year"). By written notice to Licensor within the thirty (30) day period immediately prior to the end of the second year of the Term and each Contract Year thereafter, Genius may elect in its sole discretion to include no further Licensor Programs as Pictures under this Agreement ("Final Election"). In the event of such Final Election, Genius will not be obligated to meet the Minimum Commitment for any Contract Year(s) remaining in the Agreement Term. For the avoidance of doubt, in the event of Final Election, Genius will retain all Rights Granted herein for the remainder of the Term with respect to any and all Licensor Programs already included as Pictures under this Agreement as of the last day of the Contract Year in which Final Election occurs. The Pictures, if any, as of the date hereof are set forth in Schedule A attached hereto, and Schedule A shall be supplemented from time to time as each additional Picture(s), if any is included hereunder during the Agreement Term.

2. Territory: United States.

3. Term: The "Agreement Term" will commence on the date hereof and continue for five (5) years ("Agreement Term"). The "Picture Term," with respect to each Picture, will commence on the date such Picture is included under this Agreement and continue seven (7) years following initial Videogram availability of such Picture ("Picture Term"). The Agreement Term plus all Picture Terms shall constitute the "Term."

4. Rights Granted (including the right to advertise and promote each Picture by any means in all Media throughout the Territory during the Term):

    (a) Theatrical ___
    (b) Non-Theatrical ___
    (c) Videogram: (Royalty Deal) ___ (Distribution Deal) **X** (Net Deal) ___
    (d) Television **X\* Subject to Terms IN SECTION 9(D) Below**
    (e) Video-On-Demand ("VOD") **X**
    (f) Digital **X**
    (g) Other Rights ___

5. Recoupable Advance: $250,000 per Picture, payable in the following installments on later of execution hereof and:

    (a) 50% within 30 days after Delivery of Delivery Materials for such Picture; and

(b)     50% within 30 days after initial Videogram release of such Picture by Genius in the Territory; but in no event later than 180 days after Delivery of Delivery Materials for such Picture.

6.     **Distribution Deal**: Genius distribution fees (including Videogram Distribution Deal), equal to the following percentages of Gross Receipts:

Theatrical _____ %;  Non-Theatrical _____ %;  Videogram  18%; Television 20%*
Subject to terms in Section 9(d) below; VOD 18%;  Internet 18%;  Other Rights _____ %

Gross Receipts shall be defined and paid pursuant to the Standard Terms.

7.     **Videogram Royalty Deal**: Intentionally omitted.

8.     **Videogram Net Deal**: Intentionally omitted.

9.     **Other Provisions:**

(a)     Technical specifications:  Each Picture must be a feature length motion picture with a running time of no less than ninety (90) minutes (inclusive of main and end titles); photographed in color using 35mm raw stock negative film or high definition equivalent; produced, recorded (not dubbed) and delivered in the English language; and should qualify for a MPAA rating of not more restrictive than "R."

(b)     Production Budget: Each Picture shall have documented and verifiable production costs of not less than $250,000, exclusive of any interest charges ("Budget").  Genius will have the right to pre-approve in writing the Budget and, upon completion of the Picture, the right to audit and verify the Budget and all actual production costs for the Picture.  Genius will render such approval or disapproval within ten (10) business days from receipt of the Budget or Budget Modifications, respectively, or such items will be deemed disapproved.

(c)     Creative Approvals:  Genius will have the right of approval over the following creative elements of each Picture: the title, the concept and/or subject matter, and the screenplay and all substantive revisions thereof, except for minor revisions to the screenplay such as production re-writes (example, changes to the location shoots).  Genius shall render such approval or disapproval within ten (10) business days from receipt of any such creative elements or such items will be deemed disapproved.   Licensor will grant Genius meaningful consultation over any other creative elements relating to the Pictures, including without limitation, the writer, director, producers (other than Licensor), and principal cast members, including any and all substitutions thereof.  During all phases of pre-production, production, and post-production of each Picture, Licensor shall confer in good faith with Genius on a regular basis regarding the progress of production, the content of the Picture, quality control and other technical matters pertaining to acceptable Delivery of the Picture.

(d)     Television Rights:

(i)     At such time that Licensor provides Genius Notice of any Licensor Program, Genius will have the right during the Notice Period to elect in writing to obtain the Television rights in addition to the Videogram and Digital rights in such Licensor Program if Genius elects to include such Licensor Program as a Picture under this Agreement. If Genius elects to acquire the Television rights to such Picture in addition to the Videogram and Digital rights, then for the purposes such Picture only, the Rights Granted shall be deemed to include the Television rights.  If Genius elects not to acquire the Television rights for such Picture within the Notice Period  ("Television Rights Decline"), then Licensor shall have the right to (A) license the Television rights in the Picture at any time to third parties and (B)

license the one time Television Premiere right (defined below) in the Picture to a third party (subject to the restrictions set forth below) prior to Licensor's delivery to Genius of the locked version of the Picture and/or the Delivery Materials of such Picture. For purposes of this Agreement, a "Television Premiere" shall be defined as an initial broadcast of the Picture on television prior to the exhibition and/or release of the Picture in any other media (with the exception of a Theatrical release). Notwithstanding anything herein to the contrary, in the event of a Television Rights Decline, Licensor shall not license the Television Premiere right in any Picture to a third party without first consulting with Genius and the parties mutually agreeing on a release window for such third-party's exercise of the Television Premiere rights.

(ii) In the event of a Television Rights Decline in any Picture, if Genius subsequently desires to acquire the Television rights in such Picture at any time throughout such Picture's Picture Term, Genius shall notify Licensor in writing. If Licensor has not previously licensed the Television rights in such Picture to a third party by way of a written agreement, then Licensor shall grant the Television rights in such Picture to Genius for the remainder of the Picture Term.

(iii) If Genius elects to acquire the Television rights to any Picture during the Notice Period or anytime thereafter during the Picture's Picture Term, then the recoupable advance for such Picture shall be increased by $175,000 ("Additional TV Advance") and the Distribution Fee shall be 20%. The Additional TV Advance shall be paid as follows: 50% after Delivery of the Delivery Materials for such Picture and 50% on the earlier of the initial broadcast of the Picture on any television or 180 days after Delivery of Delivery Materials for such Picture.

(e) Theatrical rights.

(i) At such time that Licensor provides Genius Notice of any Licensor Program, Genius will have the right during the Notice Period to elect in writing to obtain the Theatrical rights in addition to the Videogram and Digital rights in such Licensor Program if Genius elects to include such Licensor Program as a Picture under this Agreement. If Genius elects to acquire the Theatrical rights to such Picture in addition to the Videogram and Digital rights, then for the purposes such Picture only, the Rights Granted shall be deemed to include the Theatrical rights. If Genius elects not to acquire the Theatrical rights for such Picture within the Notice Period ("Theatrical Rights Decline"), then Licensor shall have the right to license the Theatrical rights in the Picture at any time to third parties.

(ii) In the event of a Theatrical Rights Decline in any Picture, if Genius subsequently desires to acquire the Theatrical rights in such Picture at any time throughout such Picture's Picture Term, Genius shall notify Licensor in writing. If Licensor has not previously licensed the Theatrical rights in such Picture to a third party by way of a written agreement, then Licensor shall grant the Theatrical rights in such Picture to Genius for the remainder of the Picture Term.

(iii) If Genius elects to acquire the Theatrical rights to any Picture during the Notice Period or anytime thereafter during the Picture's Picture Term then the parties shall negotiate in good faith an amendment to this agreement for the Theatrical rights setting forth any additional advances and other terms.

This Agreement constitutes the valid and binding agreement between the undersigned, shall be governed by the laws of the State of California, and may not be modified except in writing.

ACCEPTED AND AGREED:

Genius Products, Inc.                           Grodfilm Corporation ("Licensor")

By:  _____              By:  _____

Its:  _____             Its:  _____

## STANDARD TERMS AND CONDITIONS

1.  Pictures. Each "Picture" (collectively, "Pictures") is described in the Deal Terms. Licensor shall provide to Genius such additional materials, fully cleared and authorized for Genius's unrestricted use and exploitation hereunder, as Genius may require for the preparation and exploitation of all versions of the Pictures (e.g., DVD versions) for which Genius has the Rights Granted hereunder, including without limitation all supplemental footage and materials related thereto that are owned or controlled by Licensor such as deleted scenes, outtakes, behind-the-scenes footage, screen tests, promotional films, theatrical trailers, production stills, production storyboards, animatics, concept drawings and production sketches. The Pictures include any and all such materials provided by Licensor to Genius and any and all materials created by Genius for purposes of exploiting any or all of the Rights Granted. If the Rights Granted are for English language subtitled and/or dubbed versions only, then notwithstanding any such limitation(s) in the Deal Terms it is understood and agreed that, as part of Videogram version(s) of the Pictures if the Rights Granted include Videogram rights, Genius may allow viewers to turn off the English language subtitles and thereby view the Pictures in their original language versions.

2.  Territory. The "Territory" is set forth in the Deal Terms, subject to the following:

    (a)  If the Territory is the "United States," it shall include the United States, its territories, possessions and commonwealths and the U. S. Virgin Islands, Puerto Rico and Guam. The Territory shall also include Army, Navy, Air Force, Red Cross and other national or governmental installations as well as oil rigs and other commercial and/or industrial installations, wherever any such facilities and installations are located, to the extent that sales are made and/or servicing thereof is performed within the United States and/or its possessions, territories or commonwealths. The Territory shall also include ships, aircraft and carriers flying the flag of the United States wherever located. If the Rights Granted include Television and/or Video-On-Demand rights, the United States shall also include Bermuda, the Bahamas and the Caribbean Basin.

    (b)  If the Territory is "North America," it shall include the United States as defined above plus Canada, its territories, possessions and commonwealths, and such other venues and installations with respect to Canada as are set forth above with respect to the United States.

3.  Term. The "Term" is the term of this Agreement and is set forth in the Deal Terms; provided, however, that if the Rights Granted include Videogram rights, Genius shall have six (6) months after the expiration of each Picture Term as a sell-off period for Videograms of each respective Picture, during which period Genius will have the right to continue to distribute all previously manufactured Videograms of such Picture remaining in inventory. For the avoidance of doubt, Genius may not manufacture any additional Videograms of the Picture during any such Picture's sell-off period. At the end of the Term and all applicable sell-off periods, Genius shall, at Licensor's direction, either destroy the Videograms of Pictures remaining in inventory or sell them to Licensor at a price equal to Genius's actual cost in creating such Videograms. With respect to Rights Granted other than Videogram rights, Genius shall have the right during the Term to enter into sales and/or license agreements that extend beyond the Term or any Picture Term, and with respect to such agreements the Term or Picture Term, respectively, shall be deemed extended until the end of the term(s) of such agreement(s). Genius shall have a right of first negotiation with respect to Licensor's licensing any of the Rights Granted after the expiration of the Term or any Picture Term.

4.  Rights Granted. The "Rights Granted" are set forth in the Deal Terms. Licensor hereby irrevocably grants, licenses and transfers to Genius, throughout the Territory during each Picture's respective Picture Term, the exclusive distribution and other rights in each Picture and all elements thereof, under copyright and otherwise, in and to the Rights Granted, and the right to license such rights to others, and to act as sales agent on behalf of Licensor with respect to such

rights, and to make and exploit dubbed and/or subtitled versions of each Picture in all languages in the manner and media included in the Rights Granted, and to authorize others to do any or all of the foregoing, or to refrain from any or all of the foregoing as Genius may determine in its sole and absolute discretion. The Rights Granted, as applicable, include the following:

(a)     "Theatrical": the exclusive right to distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and in all manner and form exploit the Picture and all elements thereof, and to authorize others to do so, for screening in conventional or drive-in theaters open to the general public where a fee is charged for admission.

(b)     "Non-Theatrical": to the extent not already included as part of the Territory pursuant to Paragraph 2 above, the exclusive right to distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and in all manner and form exploit the Picture and all elements thereof, and to authorize others to do so, in prisons, educational institutions, libraries, museums, businesses, clubs, Red Cross, summer camps, hospitals and other similar institutions, and on military bases, oil drilling rigs, hotels, motels, ships at-sea and airlines, and by all means of exhibition, display, broadcast, transmission and telecommunications systems now known or hereafter devised, whether in analog or digital format and regardless of the technology and/or platform employed.

(c)     "Videogram": the exclusive right to design, manufacture, produce, distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and in all manner and form exploit the Pictures and all elements thereof, and to authorize others to do so, by means of and in connection with "Videograms," which for purposes hereof shall include without limitation videocassettes, videodiscs, videotapes, DVDs, High-Definition DVDs ("HD-DVD"), Universal Media Disc ("UMD"), CD-ROM, DVD-ROM and all other hard carrier devices now known or hereafter devised and designed to be used in conjunction with a personal reproduction, player or viewing apparatus which causes a visual image (whether or not synchronized with sound) to be seen on a screen, display or device, e.g., a television receiver, computer display, hand-held device or any other screen, display or device now known or hereafter devised, which Videograms shall also include menus, other navigational designs and elements and such other materials (e.g., "bonus" materials) as Genius determines in its sole discretion.

(d)     "Television": the exclusive right to distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and/or otherwise exploit the Picture and/or all elements thereof, and to authorize others to do so, by and in connection with any and all means of broadcast television, free television, pay and subscription television, cable and satellite television, and any and all other forms of television exhibition of the Picture now known or hereafter devised, whether in analog or digital format and regardless of the technology employed.

(e)     "Video-On-Demand": the exclusive right to distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and/or otherwise exploit the Pictures and/or all elements thereof, and to authorize others to do so, by and in connection with any and all means of dissemination to members of the public using a central server or other apparatus whereby receiving schedules or viewing frequency is controlled in whole or in part by Genius (or any of its licensees or assigns) or by an end user, including without limitation by means of video-on-demand, near video-on-demand, subscription video-on-demand, or other pay-per-view or similar services.

(f)     "Digital": the exclusive right to distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and/or otherwise exploit the Pictures and/or any elements thereof, and to authorize others to do so, by and in connection with any and all means of dissemination to members of the public via the internet, "World Wide Web" or any other form of digital and/or electronic transmission now known or hereafter devised,

including without limitation downloadable and/or other non-tangible delivery to fixed and mobile platforms including without limitation personal and other computers, cell phones, personal and other communication devices, personal and other digital devices, personal and other music, video and/or other audiovisual recorders and/or players, and/or via "podcast" and/or via all other personal, digital, mobile and other devices, platforms and services whether now known or hereafter devised.

(g)    "Other Rights": the exclusive right to distribute, license, sub-license, lease, rent, exhibit, promote, market, advertise, publicize and exploit in all manner, media, languages, territories and forms all so-called "ancillary" and "subsidiary" rights in and to the Pictures including without limitation remakes, sequels, prequels, television series and spinoffs as well as the exclusive film clip, music, music publishing, synchronization, master use, soundtrack, merchandising; theme park; legitimate stage and print publication rights

The Rights Granted in all events include the right to use any and all elements of each Picture and all Delivery Materials (as defined below) (including without limitation the names, voices, likenesses and biographies of all persons appearing in and/or connected with the Picture), and any portions thereof, in connection with the publicity, advertising, marketing and packaging of each Picture and/or the institutional promotion of Genius, including without limitation the right to reproduce, distribute and exhibit any and all visual images and/or sound recordings contained in each Picture and/or the Delivery Materials worldwide, by any and all means of distribution, and in any and all media now or hereafter known or devised, and the right to change the title of or otherwise modify each Picture to meet the requirements of censorship, statutes, community standards or other regulations in the Territory. If the Rights Granted include Television, Video On-Demand, Videogram and/or Digital rights, in addition to the foregoing the Rights Granted also include the right to prepare closed-caption versions of each Picture for the hearing-impaired and the right to include other programs, trailers, promotions, contests, advertising for Genius' other motion pictures, products and services.

5.    Advance. The "Advance," if any, is set forth in the Deal Terms and is paid in consideration for Licensor's entering into and performing the terms of this Agreement, and for granting the Rights Granted hereunder. The Advance is recoupable as set forth herein and is non-refundable.

6.    Allocation of Gross Receipts. All "Gross Receipts" (or "Videogram Gross Receipts" with respect to Videograms if the Rights Granted include Videogram rights) (as Gross Receipts" and "Videogram Gross Receipts" are defined herein) derived from exploitation of the Rights Granted hereunder shall be allocated as follows:

(a)    First, Genius shall retain its distribution fees equal to the applicable percentages of Gross Receipts set forth in the Deal Terms;

(b)    Then, Genius shall retain 100% of all further Gross Receipts until it has recouped all "Distribution Expenses" (as defined herein) on a continuing basis;

(c)    Then, Genius shall retain 100% of all further Gross Receipts until it has recouped the Advance, if any, all other recoupable amounts hereunder, and all "Interest" (as defined herein) thereon; and

(d)    Then, Licensor shall be entitled to all further Gross Receipts.

(e)    For the avoidance of doubt and notwithstanding anything to the contrary set forth herein, if Genius has not recouped any portion of the Advance from the Gross Receipts otherwise payable to Licensor with respect to the Rights Granted in any Picture, Genius may recoup the unrecouped portion thereof on a fully cross-collateralized basis from the Gross Receipts otherwise payable to Licensor hereunder with respect to the Rights

Granted in other Pictures.

(f) With respect to Videograms if the Rights Granted include Videogram rights, the following shall apply:

(i) Videogram Distribution Deal: With respect to a "Videogram Distribution Deal," all Videogram Gross Receipts shall be allocated as set forth in (a) through (e) above.

(ii) Videogram Royalty Deal: Intentionally omitted.

(iii) Videogram Net Deal: Intentionally omitted.

(iv) Genius shall be entitled to establish and maintain a reserve for returns of Videograms in an amount ("Return Reserve") equal to the greater of (i) twenty percent (20%) of Videogram Gross Receipts or (ii) Genius's good faith projection of the percentage of Videogram Gross Receipts that will constitute returns for such Picture, as Genius may adjust such projection from time to time; provided that any addition to the Return Reserve as a result of such projections shall be liquidated within six (6) months of its establishment.

(v) Genius shall advance the cost of producing a DVD master Videogram of each Picture, including without limitation the cost of authoring and compression and of any DVD bonus materials not provided by Licensor. The cost of creating the foregoing materials for the DVD version of the Picture shall be deemed a part of the Distribution Expenses and shall be recoupable by Genius from any monies otherwise payable to Licensor hereunder. For the avoidance of doubt, the foregoing shall include Genius's right to create (and advance and recoup the cost of as part of the Distribution Expenses) a 16:9 Digibeta video master of the Picture. Licensor shall provide Genius with access to a 35mm film print or High definition equivalent, an inter-negative or an inter-positive of each Picture for such purpose.

Genius makes no representation or warranty that any Picture will generate any Gross Receipts or any particular amount thereof.

7. Gross Receipts; Videogram Gross Receipts: "Gross Receipts" means all amounts actually received by or credited to Genius in U.S. Dollars from the distribution and exploitation of the Rights Granted hereunder (provided that with respect to Videograms, "Gross Receipts" means "Videogram Gross Receipts" as defined below), and in all events is subject to the following:

(a) Gross Receipts shall not include actual refunds, credits, discounts, rebates, allowances and adjustments granted to exhibitors; and until earned, forfeited or applied to each Picture, neither advance payments nor security deposits shall be included in Gross Receipts.

(b) No sums shall be included in Gross Receipts hereunder unless and until such sums have been received by or credited to Genius in U.S. dollars in the United States.

(c) "Videogram Gross Receipts" means the Gross Receipts derived from distribution and other exploitation of Videograms of each Picture, less all refunds, credits, rebates, discounts, allowances, the Return Reserve, actual returns (if in excess of the Return Reserve). If Videograms are distributed by Genius through an in-house catalog or other direct response method, the Videogram Gross Receipts derived therefrom shall be determined based on the average wholesale price of such Videograms, which shall be deemed to be fifty percent (50%) of the suggested retail price thereof.

8.   Distribution Expenses.  "Distribution Expenses" means and includes all costs and expenses incurred in connection with the distribution, advertising, exploitation and turning to account of each Picture and/or any of the Rights Granted of whatever kind, and include without limitation all of the following, as applicable with respect to the Rights Granted:

(a)   All costs of duped and dubbed negatives, sound tracks, prints, release prints, tapes, Videograms (including without limitation the creation, compression and authoring of Videogram masters and all costs of design, development, manufacture, production, duplication, replication and packaging of Videograms), duplicating material and facilities and all other material manufactured for use in connection with each Picture, including the cost of inspecting, repairing, checking and renovating film, reels, containers, Videograms, packing, storing, shipping and all other expenses connected therewith and inspecting and checking exhibitors' projection and sound equipment and facilities.  Genius may manufacture or cause to be manufactured as many or as few duped negatives, positive prints, Videograms and/or other materials for use in connection with each Picture as Genius, in its sole discretion, may consider advisable or desirable.

(b)   All costs of advertising, publicizing and/or exploiting each Picture by such means and to such extent as Genius may, in its sole discretion, deem desirable, including without limitation all advertisements, press books, artwork, publicity materials, advertising accessories and trailers, Videogram screeners and all other pre- and post-release advertising and publicity, so-called cooperative and/or theatre advertising, and/or other advertising and/or publicity engaged in with or for exhibitors and/or Videogram retailers.  Where any Genius advertising or publicity employee (other than an executive-supervisory employee) or facility is used for each Picture, the salary of such employee and the cost of such facility (while so used for the Picture) shall be deemed direct costs hereunder.  The costs of any in-house design services shall be charged at eighty percent (80%) of the average commercial rates for comparable services.  There shall also be included as an item of cost an amount equal to 10% of all direct costs referred to in this subparagraph (b) to cover the indirect cost of Genius's advertising and publicity departments.

(c)   All costs of preparing and delivering each Picture for distribution in connection with the Rights Granted (regardless of whether such costs are the salaries and expenses of Genius's own employees or employees or parties not regularly employed by Genius), including without limitation all costs incurred in connection with the production of foreign and/or domestic language versions of the Picture, whether dubbed, subtitled or otherwise, as well as any and all costs and expenses in connection with changing the title of the Picture, recutting, re-editing or shortening or lengthening the Picture for release in any Territory or for exhibition on television or other media (if part of the Rights Granted), or in order to conform to the requirements of censorship authorities, or for any other reason, as well as all costs in connection with the preparation of "bonus materials" or other additional materials contained in or as part of Videograms and/or other devices and/or platforms (if part of the Rights Granted), and all costs of preparing such Videograms, devices and/or platforms, including the costs of creating menus and other navigational elements and designs in connection therewith.

(d)   All sums paid or liabilities incurred on account of sales, use, receipts, income, excise, remittance and other taxes (however denominated) to any governmental authority assessed upon the negatives, duplicate negatives, prints, sound records, Videograms or other devices and/or platforms in connection with the Picture, or upon the use or distribution of the Picture, or upon the revenues derived therefrom, or any part thereof, or upon the remittance of such revenues, or any part thereof; any and all sums paid or accrued on account of duties, customs and imposts, costs of acquiring permits or any similar authority to secure the entry, licensing, exhibition, performance, use or televising of the Picture in any country in the Territory or part thereof, regardless of whether such payments or liabilities are assessed against the Picture or the proceeds thereof or

against a group of motion pictures in which the Picture may be included or the proceeds thereof. In no event shall the deductible amount of any such tax (however denominated) imposed upon Genius be decreased (nor the Gross Receipts increased) because of the manner in which such taxes are elected to be treated by Genius in filing net income corporate franchise, excess profits or similar tax returns. Subject to the foregoing (i) Genius's own United States federal and state income taxes and franchise taxes based on Genius's net income; and (ii) income taxes payable to any country or territory by Genius based on the net earnings of Genius in such country or territory and which is computed and assessed solely by reason of the retention in such country or territory by Genius of any portion of the Gross Receipts shall not be deductible hereunder.

(e)     Expenses of transmitting to the United States any funds accruing to Genius from the Picture in foreign countries and any discounts from such funds taken to convert such funds directly or indirectly into U.S. dollars.

(f)     All costs (including reasonable attorneys' fees), losses, damages or liabilities suffered or incurred by Genius in connection with: any action taken by Genius (whether by litigation or otherwise) in copyrighting, protecting and/or enforcing the Rights Granted; reducing or minimizing the matters referred to in (d) and (e) above; the collection of Gross Receipts, and other sums due Genius from exhibitors, subdistributors, retailers and others in respect of the Picture or to recover monies due pursuant to any agreement relating to the distribution or the exhibition of the Picture, checking attendance and exhibitors' receipts, preventing and/or recovering damages for unauthorized exhibition or distribution of the Picture, or any impairment of, encumbrance on or infringement upon, the Rights Granted; an allocable share attributable to the Picture of costs of prosecuting and defending actions under the antitrust laws and/or communications laws; and an allocable share attributable to the Picture of costs of auditing of books and records of any exhibitor, subdistributor, retailer or licensee.

(g)     The cost of all insurance paid or incurred by Genius covering or relating to the Picture, including without limitation errors and omissions insurance and all insurance on negatives, positive prints, sound materials, Videograms and other physical property, it being understood, however, that Genius shall not be obligated to take out or maintain any such insurance.

(h)     An allocable share attributable to the Picture of royalties payable to manufacturers of sound recording and reproducing equipment and dues and assessments of, and con-tributions by Genius to, AMPTP, MPAA, MPEAA, the Academy of Motion Picture Arts and Sciences and other trade associations or industry groups comprised of a substantial number of motion picture producers and/or distributors, but only for purposes relating to the production, distribution, export, import, advertising, exploitation and general protection and/or promotion of motion pictures.

(i)     In the event any person shall make a claim relating to the Picture against Genius or any of its licensees, which claim, in Genius's judgment, is of sufficient merit to constitute a reasonable probability of ultimate loss, cost, damage or expense, Genius may deduct under this (h) such amount as Genius may reasonably deem necessary to cover loss, cost, damage or expense which may be suffered as a result thereof. Genius shall have the right to settle and pay any such claim. After the settlement of any such claim, or after the final judicial determination thereof, the amount previously deducted hereunder shall be adjusted accordingly with the next accounting statement rendered hereunder. Nothing herein contained shall be construed as a waiver of any of Licensor's warranties contained in this Agreement, or a waiver of any right or remedy at law or otherwise which may exist in favor of Genius including without limitation the right to require Licensor to reimburse Genius on demand for any liability, cost, damage or expense arising out of, or resulting from, any breach by Licensor of any warranty, undertaking or obligation by Licensor, or

any right on the part of Genius to recoup or recover any such cost or expense out of Licensor's share of any monies payable hereunder, or otherwise, rather than treating such costs or expenses as Distribution Expenses.

(j)    All amounts paid or payable to or for the benefit of actors, writers, composers, directors and others, pursuant to applicable collective bargaining agreements and/or any law or governmental regulation or decree now or hereafter in force by reason of, and/or as a condition or consideration for, any exhibition, use, re-use, rerun, performance, sale, license and/or distribution of the Picture and/or copies of all or any part thereof, on television, supplemental markets, or otherwise (as part of the Rights Granted) (collectively, "residuals"), together with all taxes, pension fund contributions and other costs paid or payable in respect of such residuals, and in respect of percentage participations in the Picture, payable to any person or entity other than Licensor as set forth in the Deal Terms.

Genius agrees to provide Licensor with initial Distribution Expense guidelines with prevailing market rates for anticipated Distribution Expenses in connection with exploitation of the Pictures for informational purposes only, subject to change at Genius' sole discretion at any time.

9.    Interest.  "Interest" means the prime rate of interest charged by Citibank from time to time plus 2.0%, and shall accrue from the date Genius pays Licensor the sums on which Interest is charged (e.g., the Advance) until the last date of the applicable accounting period in which such amounts are recouped by Genius.

10.    Delivery.  "Delivery" means complete delivery and acceptance, in Genius's sole discretion, of all of the delivery materials (collectively, "Delivery Materials") set forth in Schedule B attached hereto, which Delivery Materials for each Picture shall be delivered to Genius, at Licensor's sole cost and expense, promptly upon full execution of this Agreement but no later than ninety (90) days prior to the initial home video release date of such Picture in the Territory ("Delivery Date"). At Genius's request, Licensor shall also deliver, at its expense, copies of any agreements entered into in connection with the Picture not listed in the Delivery Materials in Schedule B.  Time is of the essence of this Agreement with respect to Licensor's complete Delivery on or before the Delivery Date.  If Licensor does not timely deliver one or more items of the Film Materials and/or Publicity Materials listed in Schedule B, then without limiting any of Genius's rights or remedies hereunder, Genius shall have the right to create or obtain any such Film or Publicity Materials on Licensor's behalf and recoup 125% of the cost of such Film or Publicity Materials from any amounts otherwise payable to Licensor under this Agreement, including any Advance payable hereunder.

11.    Holdback.  Where the Rights Granted do not include Television rights, Licensor may exploit Television rights for any Picture upon the mutual agreement between Licensor and Genius regarding the Television Premiere rights release window for such Picture as described in Paragraph 9(d)(i) of the Deal Memo.

12.    Exclusivity; No Prior Exploitation.  Licensor represents and warrants that it has not prior to the date hereof sold, licensed or exploited, nor authorized any other party to sell, license or exploit, any of the Rights Granted, nor will it do or authorize same in the Territory during the Term.

13.    Credits.  Genius shall use the credit block provided by Licensor on the prints, posters, packaging box and advertising materials for each Picture.  Genius shall not alter the copyright notice on the Picture, provided that Genius may add its and/or its affiliates', licensees' and/or sublicensees' logos on prints, Videograms, packaging and advertising materials for the Picture. Notwithstanding the foregoing, if Genius requires Licensor to make modifications to any copyright notices or credits in any Picture after Licensor's completion of post-production on such Picture, such modifications will be at Genius's expense.  Genius shall notify its licensees of the aforementioned credit provisions.  No casual or inadvertent failure to accord credits as set forth hereunder shall be deemed a breach of this Agreement by Genius. Licensor shall inform Genius

in writing, no later than ten (10) days after execution of this Agreement, of any restrictions on the use of any of the Delivery Materials, including without limitation clips and footage for use in Genius's advertising and marketing campaign. Licensor shall have the right to access and use any advertising materials created by Genius in connection with the Pictures upon ten (10) business days' written notice to Genius. Genius makes no representation or warranty whatsoever that (i) such materials are cleared for any use by Licensor, (ii) such materials are free from restrictions or third-party claims, or (iii) the use of such materials will not violate, conflict with, or infringe upon the rights of any other party. For the avoidance of doubt, Genius shall have no obligation to create any advertising and marketing materials for Licensor's use.

14.     Representations and Warranties. Licensor hereby represents and warrants that:

(a)     Licensor has the full right, power, and authority to enter into and perform this Agreement and to grant to Genius hereunder all of the Rights Granted, and that Licensor solely controls and shall solely control throughout the Territory during the Term all of the Rights Granted in and to each Picture and all elements thereof, including without limitation all performance, distribution, exhibition, advertising and all other rights therein.

(b)     No claim has been made that Licensor does not or may not have any of the Rights Granted, and there is not now valid or outstanding, and Licensor will not hereafter grant any right in connection with each Picture which is or would be adverse to, or inconsistent with, or impair, the Rights Granted, no portion of any Picture has been taken from any other work and there has been no claim that any Picture violates, conflicts with, or infringes upon, and the Pictures do not violate, conflict with or infringe upon, any rights whatsoever (including, without limitation, any copyright, common law or statutory right anywhere in the world; any right of publication, performance, or any other right in any work; nor does any Picture constitute or contain any libel, slander, invasion of privacy or defamation of any person, or entity; and neither the Pictures nor any elements thereof are the subject of any third party claim; and the Pictures and all elements thereof and all Delivery Materials shall be fully cleared by Licensor for all uses set forth herein, and no payments will be required to be made to any third party in connection with the exploitation of Pictures hereunder (or, if any such payments are required, Licensor will be solely responsible therefor and indemnify and hold harmless Genius in connection therewith).

(c)     Licensor shall deliver, or cause to be delivered, to Genius or to such other place as Genius shall designate within Los Angeles County, the Delivery Materials no later than the Delivery Date. Any items that are not delivered to Genius may be created by Genius and the costs deducted from any remaining payments of any Advance or, if no portion of any Advance remains payable, recouped from any other monies otherwise payable to Licensor hereunder.

(d)     The main and end titles, credit block and all publicity, promotion, advertising and packaging information and materials with respect to each Picture will (i) contain all necessary and proper credits for the actors, directors, writers and all other persons appearing in or connected with the production of each Picture who are entitled to receive such credit, and (ii) fully comply with all applicable contractual, guild, union and statutory requirements and agreements.

15.     Indemnity. Licensor shall defend, indemnify and hold harmless Genius, any parent, affiliate, distributor, licensee or assignee of Genius, and its and their respective owners, shareholders, members, managers, officers, directors, employees and agents from and against all claims, losses, liabilities, actions, judgments, costs and expenses of any kind (including without limitation attorneys' fees and costs) arising out of or in connection with (i) any exploitation of the Rights Granted or any other rights hereunder, (ii) the contents of any Picture, (iii) any illegal act committed by Licensor in connection with any Picture, (iv) any breach by Licensor of any representation, warranty or agreement set forth in this Agreement, or (v) Licensor's use of any

advertising or marketing materials created by Genius. Genius shall defend, indemnify and hold harmless Licensor, any parent, affiliate, distributor, licensee or assignee of Licensor, and its and their respective owners, shareholders, members, managers, officers, directors, employees and agents from and against all claims, losses, liabilities, actions, judgments, costs and expenses of any kind (including without limitation attorneys' fees and costs) arising out of or in connection with (i) any illegal act committed by Genius in connection with any Picture, or (ii) any breach by Genius of any representation, warranty or agreement set forth in this Agreement.

16.     <u>Insurance</u>. Commencing no later than the Delivery of each Picture, Licensor shall maintain, at its sole cost and expense, an Errors and Omissions policy of insurance with respect to each Picture which has limits of not less than $1,000,000 per occurrence / $3,000,000 in the aggregate per year, and a deductible of not more than $10,000 (the "E&O Policy"). Licensor shall include Genius as an additional insured on the E&O Policy. The E&O Policy shall provide that it may not be canceled or modified without prior written notice to and written approval by Genius. Upon Genius's request Licensor shall provide Genius with a certificate of Errors and Omissions coverage naming any sublicensee of Genius as an additional insured.

17.     <u>Accounting Statements; Payments, Withholdings</u>.

      (a)     During the Term and all sell-off periods, Genius will render or cause to be rendered to Licensor quarterly accounting statements within ninety (90) days after the last day of the applicable accounting period (i.e., the periods ending March 31, June 30, September 30 and December 31); provided, however, that no statements need be rendered for any accounting period in which no Gross Receipts are received, and no check for payment need be issued for any accounting period in which monies due to Licensor equal less than One Hundred Dollars ($100). All monies payable to Licensor hereunder shall be paid simultaneously with the rendering of such statements. Notwithstanding the foregoing, Genius shall have the right to suspend the payment of any monies due Licensor if Licensor is in breach of any of its representations, warranties or agreements hereunder.

      (b)     Licensor will be deemed to have consented to all accounting statements rendered by Genius or its assignees, licensees or successors, and all statements will be binding upon Licensor and will be deemed an account stated and not subject to any objection by Licensor for any reason, unless specific written objection to such statement is received by Genius within one (1) year from the date such statement was rendered. In the event that Licensor makes a timely written objection to an accounting statement, Licensor shall have one (1) year from the date of such written objection to bring suit; thereafter, Licensor shall be deemed to have waived such objection finally and conclusively.

      (c)     There shall be deducted from any payments to or for the account of Licensor hereunder the amount of any tax or other withholding which, pursuant to applicable laws, is required to be made by Genius, based upon, measured by, or resulting from payments to or for the account of Licensor. Any such deductions shall be in accordance with the good faith interpretation by Genius of such laws. Genius shall not be liable to Licensor for any such tax deductions and/or withholdings. Genius will use its reasonable efforts to provide to Licensor a certificate of withholding or similar document as may be supplied by the applicable government evidencing any and all such deductions or withholdings. Any and all claims which Licensor may have as to such tax deductions and/or withholdings shall be made and prosecuted by Licensor directly against the entity involved and not against Genius.

18.     <u>Distribution and Exploitation</u>. Genius shall have the right, as it may determine in its sole discretion, (i) to determine the parties, consideration and all other terms and conditions of any agreement entered into by Genius for the exploitation of the Rights Granted; (ii) to settle any claim with respect to any such agreement or the Rights Granted; and (iii) if Videograms are

included in the Rights Granted, to distribute free or promotional Videograms and to erase or destroy Videograms.

19.     Licensor Bankruptcy.  Licensor and Genius hereby acknowledge and agree that in the event of Licensor's bankruptcy or the appointment of a receiver for Licensor, (i) the Rights Granted are fundamentally in the nature of "intellectual property" as defined in the Title 11 of the United States Code as now or hereafter in effect, or any successor statute (the "Bankruptcy Code"), and (ii) Genius's continued enjoyment of all of the  Rights Granted is of the essence of this Agreement and fundamental to rights granted hereunder; and therefore all of the Rights Granted shall be deemed intellectual property subject to Genius's election under Section 365(n)(1)(B) of the Bankruptcy Code.  Upon any election by Genius pursuant to Section 365(n)(1)(B) of the Bankruptcy Code, Genius shall be entitled, on its own or through employees, contractors, agents or otherwise, to upgrade, modify and develop derivative works based upon the Rights Granted.

20.     Dispute Resolution.  Any and all controversies, claims or disputes arising out of or related to this Agreement or the interpretation, performance or breach thereof, including without limitation alleged violations of state or federal statutory or common law rights or duties and the determination of the scope or applicability of this paragraph ("Dispute"), shall be resolved according to the following procedures, which shall constitute the sole dispute resolution mechanism hereunder:  In the event that Licensor and Genius are unable to resolve any Dispute informally, the Dispute shall be submitted to final and binding arbitration.  The arbitration shall be initiated and conducted according to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claims over $250,000) Arbitration Rules and Procedures except as modified herein, including the Optional Appeal Procedure, at the Los Angeles offices of Judicial Arbitration and Mediation Service or its successors ("JAMS") in effect at the time the request for arbitration is made ("Arbitration Rules").  The arbitration shall be conducted in Los Angeles County, California, before a single neutral arbitrator appointed in accordance with the Arbitration Rules.  The arbitrator shall follow California law and Federal Rules of Evidence in adjudicating the Dispute.  The parties waive the right to seek punitive damages and the arbitrator shall have no authority to award such damages.  The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, enforce, correct, or vacate the award.  Unless Licensor and Genius agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any California state or federal court with experience in matters involving the entertainment industry.  If either party refuses to perform any or all of its obligations under the final arbitration award (following appeal, if applicable) within thirty (30) days of such award being rendered, then the other party may enforce the final award in any court of competent jurisdiction in Los Angeles County. The party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including reasonable outside attorneys' fees, incurred in enforcing the award, to be paid by the party against whom enforcement is ordered.  Any Dispute or portion thereof, or any claim for a particular form of relief (not otherwise precluded by any other provision of this Agreement) that may not be arbitrated pursuant to applicable state or federal law may be heard only in a court of competent jurisdiction in Los Angeles County.

21.     Notices.  All notices, accountings, payments and any other document that either of the parties is required or may desire to serve upon the other party ("Notices") may be served by personal delivery or by registered or certified mail, return receipt requested, or by overnight or express courier, all postage and other charges prepaid.  Notices to Genius shall be sent to Genius at 740 Lomas Santa Fe, Suite 210, Solana Beach, CA 92075, Attention: Michel Urich; and Notices to Licensor shall be sent to Licensor's address set forth on the first page of this Agreement; or to such other address that one party may hereafter designate in writing to the other.  Receipt of Notices shall be deemed to have occurred five (5) days after the date of mailing, the date of personal delivery or the day after mailing by overnight courier, as applicable.

22.     Assignment.  This Agreement will be binding upon and will inure to the benefit of the parties and their respective successors and permitted assigns.  Licensor may not assign this Agreement or

any of its rights hereunder; provided, however, that after complete Delivery of all Delivery Materials and Genius's acknowledgment and acceptance thereof in writing, Licensor may assign its right, on a one-time basis to no more than one (1) other party, to receive its share of Gross Receipts hereunder. Genius may assign this Agreement or any or all of its rights hereunder to any person or entity at any time.

23.    Remedies.  In the event of any breach of this Agreement by Genius, Licensor's sole remedy shall be an action for money damages at law.  Licensor expressly waives any and all equitable rights Licensor may have hereunder and in no event shall Licensor have any right to enjoin, rescind, terminate or otherwise interfere with the distribution, advertising, marketing, publicity and/or any other exploitation by Genius of the Pictures or any of the Rights Granted hereunder.  No failure by either party to fulfill any of its obligations hereunder shall constitute a breach of this Agreement by such party unless and until the non-breaching party has provided the breaching party with written notice specifying such failure(s) and the breaching party has failed to cure such breach within thirty (30) days after receipt of such notice, provided, however, that the foregoing cure period shall not apply (and there shall be no cure period with respect to) Licensor's Delivery obligations pursuant to these Standard Terms.

24.    Force Majeure.  Notwithstanding any other provision of this Agreement, Genius shall have the right, upon written notice to Licensor, to suspend and/or extend the Term during all periods in which any of the Rights Granted are interfered with, hampered or interrupted on account of an event of force majeure (e.g., any labor dispute, industrial accident, fire, theft, act of God, war, governmental action, injunction, third party breach of contract or other material interference with Genius's business activities, or any other event beyond Genius' control)  Thereafter, upon cessation of such event, the Term shall resume and shall be extended by a period of time equal to the number of days for which it was suspended.

25.    Additional Documents   Promptly upon Genius's request, Licensor shall execute, acknowledge and/or deliver to Genius any and all further documents that are necessary, expedient or proper to carry out, secure, perfect and/or effectuate the purposes and intent of this Agreement and/or any of Genius's rights hereunder, including without limitation the short form assignment attached hereto as Exhibit A.  Genius is hereby irrevocably appointed Licensor's lawful attorney-in-fact (such appointment being a power coupled with an interest) to do all acts and things permitted or contemplated by the terms of this paragraph.  Genius's reasonable costs and expenses (including reasonable counsel fees and expenses) paid or incurred in connection with any proceeding or in relation to any such acts shall be considered to be recoupable distribution expenses for all of the purposes of this Agreement.  Nothing herein contained shall be deemed to be a limitation upon or modification or restriction of the indemnity provisions set forth in this Agreement.

26.    Entire Agreement.  This Agreement is the complete and final agreement and understanding between the parties with respect to the subject matter hereof.  The parties hereby acknowledge that they are not, nor shall this Agreement be construed to constitute, a partnership or joint venture between them. The parties agree that this Agreement will be construed in all respects in accordance with the laws of the State of California applicable to agreements entered into and to be wholly performed therein. This Agreement may not be changed or modified, or any covenant or provision hereof waived, except by an agreement in writing.  Paragraph headings are used in this Agreement for convenience only, and will not be used to interpret or construe the provisions of this Agreement.


**END OF STANDARD TERMS AND CONDITIONS**

SCHEDULE A

PICTURES

SCHEDULE B

**DELIVERY MATERIALS**

Licensor shall make full and complete delivery to Genius or its designees, at Licensor's sole cost, of each and every item specified below as set forth herein and any other material required to be delivered pursuant to this agreement, to the following address in New York or elsewhere in the Territory as Genius may designate. When delivery of an element is by access, it shall be substantially in the form of the laboratory access letter attached hereto. All Delivery Materials are to be delivered to Genius, Attention: Chief Operating Officer or to such other person as Genius may designate.

All must be subtitled or dubbed into English before delivery, with the acknowledgment and approval of Genius. All non-film materials not originally in English (including foreign language publicity materials) are to be provided along with an English translation.

I.     **DOCUMENTATION**

1.     Executed short form assignment in the form of Exhibit A attached to this Agreement.

2.     Executed Statement of Origins and Contact Information in the form of Exhibit B attached to this Agreement.

3.     One (1) Certificate of United States Copyright Registration for the screenplay or if not yet available, a copy of the application therefore accompanied by the letter of transmission to the U.S. Copyright Office;

4.     One (1) Certificate of United States Copyright Registration for the Picture or if not yet available, a copy of the application therefore accompanied by the letter of transmission to the U.S. Copyright Office.

5.     Chain-of-title documentation evidencing valid and effective transfers to Licensor of the following:

(a)     any underlying intellectual property incorporated into the Picture from original author to Licensor and any and all intermediate rights holders, and certificates of authorship with respect to any creative services provided on a work-made-for-hire basis.

(b)     a schedule indicating (i) the date of original copyright of the musical, literary and dramatic materials upon which the Picture is based, if applicable (and any renewals and extensions thereof), and (ii) the exact copyright notice of the Picture

(c)     one (1) copy of each of the signed composers, lyricist and/or publishing agreements entered into for the original music composed for and embodied in the Picture

(d)     synchronization licenses for every musical composition and Master Recordings contained in the Picture ("the Synchronization Licenses"). The Synchronization Licenses shall be in full force and effect, and shall permit the synchronization, reproduction, exhibition and distribution of each clip, item of previously released footage, musical composition and master recordings as embodied as the Picture in all media including on Video Recordings throughout the Territory during the Term and the Sell Off Period. Delivery of the Synchronization Licenses to Genius shall not relieve Licensor of its warranties made in this Agreement and shall not in any way affect Genius's rights under such agreement in the event of a breach of such warranties.

(e)     all clip and/or previously released footage licenses for every clip and item of previously released footage contained in the Program, if any.

6.  Credit Block (i.e. complete and accurate written statement of all screen and advertising credit obligations and any and all likeness restrictions, together with a layout of the proposed advertising credits and photostatic copies of excerpts from all agreements defining and describing both the form and nature of the required credits (including any tie-in obligations) and any restrictions as to the use of name and likeness.

7.  If the Picture was recorded in Dolby or Ultra Stereo, a copy of the applicable license.

8.  If required in writing by Genius, all agreements or other documents relating to the engagement of personnel in connection with the Picture not set forth above (including those individual producers, directors, artists and conductors) as may be requested by Genius in form and substance satisfactory to Genius and in accordance with industry standards.

9.

10. A music cue sheet(s) in customary form containing all titles, timings, copyright owners and publishers, performance rights societies, and type of usage.

11. If applicable, a copy of a paid rating certificate for the Picture from the Motion Picture Association of America, no more restrictive than "R."

12. If applicable, a copy of a paid rating certificate from the Motion Picture Association of America for the trailer of the Picture approved for General Audiences.

13. Certificate of errors and omissions and all other insurance policies naming Genius and any sub-licensees as additional insureds (which policies shall have limits of not less than $1,000,000/$3,000,000 with a deductible of not more than $10,000) for each Picture, at Licensor's sole cost and expense and a copy of the policy itself which must cover no less than the first three (3) years immediately following Licensor's Delivery of such Picture.

14. Title Report obtained by Licensor from Thomson & Thomson, Dennis Angel or another entity acceptable to Genius for purposes of obtaining errors and omissions insurance.

15. Copyright Research Report of the Picture obtained by Licensor from Thomson & Thomson or another entity acceptable to Genius.

16. U.S. Tax Forms fully completed and executed on behalf of Licensor, required for the payment of monies by Genius to Licensor, including without limitation Department of Treasury IRS Forms SS-4 and/or W-8BEN, as applicable.

II.  **FILM MATERIALS:**

**If theatrical rights are licensed to Genius, the following:**

    (a)    Intentionally omitted.

    (f)    Intentionally omitted.

**If Television and/or Videogram rights are licensed to Genius, the following:**

    (a)    One dialogue/continuity and spotting transcript with time code/edge code.

    (b)    Music cue sheets

(c)     One (1) original first class quality Digital Betacam NTSC 16:9 UNSUBTITLED master with NON-DROP FRAME timecode, technically suitable television broadcast and/or the manufacture of video recordings including DVDs, with the following audio and text configuration:

Channel 1:     full stereo mix left
Channel 2:     full stereo mix right
Channel 3:     music, effects (stereo left)
Channel 4:     music, effects (stereo right)

(d)     Two (2) original first class quality Digital Betacam NTSC or High Definition videotape full frame 1.33 master (One with ENGLISH SUBTITLES and one UNSUBTITLED) with NON-DROP FRAME timecode, technically suitable television broadcast and/or the manufacture of video recordings including DVDs, with the following audio and text configuration:

Channel 1:     full stereo mix left
Channel 2:     full stereo mix right
Channel 3:     music, effects (stereo left)
Channel 4:     music, effects (stereo right)

(e)     One (1) original first class quality Digital Betacam NTSC or High Definition videotape 1.85, 2.35 letterbox master UNSUBTITLED with NON-DROP FRAME timecode, technically suitable television broadcast and/or the manufacture of video recordings including DVDs, with the following audio and text configuration:

Channel 1:     full stereo mix left
Channel 2:     full stereo mix right
Channel 3:     music, effects (stereo left)
Channel 4:     music, effects (stereo right)

(f)     If available, one (1) NTSC Digital Betacam of deleted scenes (with sync audio), interview footage, EPK's, making of footage, or other video or audio material suitable for inclusion as bonus material on DVD.

(g)     One (1) DA88 with 29.97 non-drop frame time code that syncs with above with the following configuration:

Channel 1:     full stereo mix left
Channel 2:     full stereo mix right
Channel 3:     dialogue left
Channel 4:     dialogue right
Channel 5:     music left
Channel 6:     music right
Channel 7:     effects left
Channel 8:     effects right

(h)     One (1) DA88 or DAT with 29.97 non-drop frame time code of all music scores in the Picture/program free from fades.

(i)     One (1) DA88 with 29.97 non-drop frame time code of a 5.1 Dolby Surround Sound mix suitable for DVD encoding and disc manufacture.

(j)     One (1) Digital Betacam NTSC of trailer, if available.

(k)     Free access to foreign language masters, if and when created.

III.    PUBLICITY MATERIALS:

Such pre-existing advertisements, publicity pieces and promotional materials concerning the Picture ("Publicity Materials") as Genius requires, including without limitation the following:

(a)     Press kit information, including

(i)     a minimum one-page synopsis of the story
(ii)    production notes
(iii)   bios for key players, the director, producers, screenwriters
(iv)    credit lists of cast and crew. All in English

(b)     Billing block to be delivered on a CD, or sent via electronic mail. (Billing block may also be delivered as a b&w photostat with prior approval of the Genius's Director of Creative Services.) All billing block art will be considered pre-approved by all parties prior to delivery.

(c)     If available, Unit photography (not to be less than 10 images delivered on CD) cleared for all uses, including without limitation key art, consisting of all b&w/color print photography and 4/c transparency photography relating to the Picture and/or of actors in the Picture shot on the set or for publicity to be delivered unedited in its entirety. (Notations should be made where possible identifying the persons and subject matter depicted.) Unit photography elements are non-returnable and the property of Genius; duplication of original photography is the responsibility of the Licensor. Minimally, a photo of the Director of the Picture is required.

(d)     EPK to be delivered on Digital Betacam NTSC. EPK should contain scene clips, soundbites, unedited B-roll, featurette and trailer, if available.

(e)     All other available advertising and marketing materials including one-sheets, sell sheets and advertising art elements.

EXHIBIT A

SHORT-FORM ASSIGNMENT AND POWER OF ATTORNEY

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned ("Assignor") hereby sells, assigns, transfers and sets over unto Genius Products, Inc., and its successors, licensees and assigns (collectively "Assignee") the exclusive distribution rights in and to the below-entitled Pictures and any and all parts or elements thereof, in the Media throughout the Territory during the Term (as such terms are defined below), as more particularly set forth and subject to the terms and conditions of the agreement (the "Agreement") dated as of March 28, 2006, between Assignor and Assignee in connection with the Picture.

Picture: During the Agreement Term, Genius will have the right of first refusal, in its sole discretion, to the exclusive Rights Granted with respect to all motion pictures to be produced by Licensor or any other producer for the benefit of Licensor ("Licensor Programs"). Licensor shall give Genius written notice of any such Licensor Program(s) and Genius shall have ten (10) business days from receipt of such notice to elect in writing to include such Licensor Program(s) under this Agreement (each included Licensor Program will be a "Picture" and, collectively, "Pictures"). Genius agrees to elect to include a minimum of four (4) Licensor Programs as Pictures annually commencing upon the date of the Agreement for the first two (2) contract years and for all contract years thereafter at Genius' discretion.

Territory: United States ("Territory").

Term: The "Agreement Term" will commence on March 28, 2006, and continue for five (5) years ("Agreement Term"). The "Picture Term," with respect to each Picture, will commence on the date such Picture is included under this Agreement and continue seven (7) years following initial Videogram availability of such Picture ("Picture Term"). The Agreement Term plus all Picture Terms shall constitute the "Term."

Media in which distribution rights are granted (as all of the below terms are defined in the Agreement):

Theatrical  __          Non-Theatrical  __          Videograms  _X_
Television  _X*_               Video-On-Demand  _X_          Internet  _X_          Other Rights

*Television rights will be granted only if elected by Genius pursuant to the Agreement for an additional advance.

Assignor agrees to obtain or cause to be obtained copyrights and renewals of all copyrights in the Pictures, and hereby assigns the aforesaid rights in the Pictures under said copyrights to Assignee; and should Assignor fail to do any of the foregoing, Assignor hereby appoints Assignee as its attorney-in-fact to do all such acts and to execute, deliver, file, register and record all such documents, in the name and on behalf of Assignor, as Assignee may deem necessary or proper to accomplish same, which appointment is coupled with an interest and irrevocable.

Assignee is also hereby empowered and authorized to bring, prosecute, defend and appear in suits, actions and proceedings of any nature under or concerning all copyrights in the Pictures and all renewals thereof, or concerning any infringement thereof or any of the rights granted herein, in its own name or that of the copyright proprietor, and at its option Assignee may join Assignor or such copyright proprietor as a party plaintiff or defendant in any such suit, action or proceeding.

Dated: _May 10, 2006_

Grodfilm Corporation
("Assignor")

By _____   Print Name: _____

Title: _____

# EXHIBIT B

## STATEMENT OF ORIGINS & CONTACT INFORMATION

Licensor must fill out the below Statement of Origins and Contact Information Form prior to the delivery of materials. Please fill in all applicable information and check all boxes that apply. This form should be completed and returned directly to Genius, Attention: Legal Department.

FILM TITLE: _____

ENGLISH TITLE (If applicable) _____

COUNTRY OF ORIGIN:_____   ORIGINAL LANGUAGE:_____

RUNNING TIME: _____   DATE COMPLETED: _____

FILM SYNOPSIS: _____


DIRECTOR _____

WRITER _____

PRODUCER _____

DP _____

EDITOR _____

CHECK ALL THE BOXES THAT APPLY:

GAUGE:   [ ]35MM   [ ]SUPER16   [ ]16MM   [ ]DV   [ ]BETA SP   [ ]HI-8   [ ]Digital Betacam   HD[ ]
         [ ]

FORMAT:   [ ]COLOR   [ ]B&W

ORIGINAL FORMAT OF TELECINE TRANSFER: [ ]Digital Betacam   [ ]HD   [ ]BETA SP   [ ]DC   [ ]DV   [ ]_____

VIDEO FRAMING:   [ ]FULL   [ ]PAN & SCAN   [ ]LB 1.85   [ ]LB 1.66   [ ]LB 16X9 [ ]_____

ORIGINAL STANDARD OF STANDARD TRANSFER: [ ]NTSC   [ ]PAL   [ ]HD

APPROXIMATE DATE OF TELECINE TRANSFER: _____

LABORATORY OF TRANSFER _____

PERTINENT RESTORATION INFORMATION _____

SOUND:   [ ]DOLBY SR   [ ]DOLBY A   [ ]OPTICAL   [ ]MONO   [ ]STEREO

DIALOGUE:   [ ]ENGLISH   [ ]NONE

SUBTITLES       [ ]NO            [ ]YES, in what language? _____

M&E TRACK:      [ ]NO            [ ]YES

SURROUND        [ ]NO            [ ]YES, specifics (ie. Dolby Pro-Logic, 5.1, etc.) _____

CLOSED CAPTIONED        [ ]NO    [ ]YES

NEGATIVE AVAILABLE:     [ ]NO    [ ]YES, Contact _____

PRINT AVAILABLE:        [ ]NO    [ ]YES, Contact _____ NUMBER OF PRINTS:# _____

## PRIMARY FILM CONTACT INFORMATION

PRIMARY CONTACT     _____

RELATION TO FILM    _____

PRODUCTION CO       _____

MAILING ADDRESS     _____

CITY, STATE, ZIP    _____

COUNTRY             _____

PHONE:      PRIMARY _____ ALT _____

FAX:        PRIMARY _____ ALT _____

E-MAIL:     PRIMARY _____ ALT _____

## DIRECTOR CONTACT INFORMATION , IF DIFERENT THAN ABOVE:

MAILING ADDRESS     _____

CITY, STATE, ZIP    _____

COUNTRY             _____

PHONE:      PRIMARY _____ ALT _____

FAX:        PRIMARY _____ ALT _____

E-MAIL:     PRIMARY _____ ALT _____

## EXHIBIT C

### FORM OF LABORATORY ACCESS LETTER

**DATE**

**LABORATORY NAME** (the "Laboratory")
**LABORATORY ADDRESS**

Re: **"NAME OF PICTURE"**

To Whom It May Concern:

1.  PICTURE/TERM/TERRITORY: The undersigned, **your name or production company name** ("Licensor") has granted to Genius Products, Inc. (the "Distributor") a license to manufacture, market, distribute, exhibit and otherwise exploit the motion picture entitled **name of picture** (the "Picture") for a Distribution term expiring **date** (the "Term") for the territory **name of territory** (the "Territory").

2.  MATERIAL: Laboratory confirms that the materials as set forth on the attached ANNEX 1 (**list of film materials**) (the "Material") are satisfactory for the manufacture of commercially acceptable quality prints, video duplicates, video transfers, and pre-print material. During the entire period of said license, the Material shall remain in Laboratory's possession and under Laboratory's control at the above address and shall not be removed from the facility without the express written consent of both the Distributor and Licensor.

3.  DISTRIBUTOR'S ORDERS. This will authorize, direct and instruct the Laboratory to fill all orders of Distributor or Distributor's designees at any time during the Term as Distributor or Distributor's designees shall request at the sole cost and expense of Distributor or Distributor's designees.

4.  NO CLAIM: Notwithstanding any claim or lien which Laboratory may now or hereafter assert against Licensor or others with respect to the Picture or any of the Material, Laboratory agrees that it shall not, by asserting or enforcing any such claim or lien, refuse to accept or perform any requests placed by Distributor or Distributor's designees as herein provided. Conversely, notwithstanding any claim or lien which Laboratory may now or hereafter have or assert against Distributor or others against Picture or any of the Material, Laboratory agrees that it shall not, by asserting or enforcing any such claim or lien refuse to accept or perform any requests placed by Licensor or Licensor's designee as herein provided.

5.  IRREVOCABILITY: The instruction, authorization and directions herein contained in favor of Distributor are being relied on by Distributor and are coupled with an interest and may not be revoked, rescinded, or in any way modified without written consent of

Distributor.  During the Term, Laboratory irrevocably agrees and undertakes not to cause or permit the removal of the Material from its premises without the written permission of both Licensor and Distributor.

6.    LABORATORY FACILITY ACKNOWLEDGMENT.  By signing in the space provided below, Laboratory agrees that it will fill all orders from Distributor or Distributor's designees, as the case may be, in accordance with the authority granted herein without regard to any liability or obligation or Licensor or any third party and Laboratory agrees to be bound by the foregoing instructions and directions.

7.    This agreement supersedes and revokes any prior instruments or written agreement among the parties in connection with the Material.

8.    If no orders are received by Laboratory in regard to the Picture for the period of one (1) year, the Licensor agrees that it shall either commence paying Laboratory charges for the storage of the Material or remove the Material to another laboratory subject to such laboratory executing a Laboratory Access Agreement in favor of Distributor substantially in the form hereof.

By signing in the space provided below, the signatories agree to all of the terms and conditions herein set forth.

Very truly yours.

**Licensor name**
"Licensor"

By:    _____
Title:    _Presi dent_

ACKNOWLEDGED AND AGREED TO.

**Laboratory name**
"Laboratory"


By:    _____
Title:

GENIUS PRODUCTS, INC.
"Distributor"

By: _____
Title: _____

27/27

# EXHIBIT "B"



As of May 12, 2008

Grodfilm Corporation
13331 Valley Vista Blvd.
Sherman Oaks, CA 91423
Attention: Dan Grodnik

Gentlemen:

Reference is made to that certain Distribution Agreement dated as of May 10, 2006 ("Agreement") between Grodfilm Corporation ("Licensor") and Genius Products, LLC, successor in interest to Genius Products, Inc. ("Genius").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the undersigned, the Agreement is hereby amended by Licensor and Genius as follows:

1.    Section 1. of the Distribution Agreement will be deleted in its entirety and replaced with the following:

Pictures: Licensor hereby grants exclusively to Genius, throughout the Territory and during the Term, the Rights Granted in all languages in and to the following feature-length motion pictures (each a "Picture" and collectively, "Pictures"), including all elements and versions of all of the foregoing: "Hallowed Ground," "House Next Door," "Malibu Shark Attack," and "Snow Demon."

2.    Section 3. of the Distribution Agreement will be deleted in its entirety and replaced with the following:

Term: The "Picture Term," with respect to each Picture, will commence on the date such Picture is included under this Agreement and continue seven (7) years following initial Videogram availability of such Picture. The "Term" shall be the period commencing on the date of this Agreement and expiring upon the expiration of the last to expire sell-off period hereunder.

3.    The following language shall be deleted in its entirety from section 4(d) of the Distribution Agreement: "X* Subject to Terms IN SECTION 9(d) Below."

4.    The following language shall be added to the Distribution Agreement as Section 5(c):

Notwithstanding the foregoing, with respect to the Picture entitled "Malibu Shark Attack," the Recoupable Advance shall be $250,000 payable as follows:

(i)    50% within 30 days after the later of Delivery of Delivery Materials for such Picture or January 31, 2009; and

(ii)    50% within 30 days after initival Videogram release of such Picture by Genius in the Territory.

Grodfilm Dist Agmt Amendment 4 v1 6.16.08

5. The following language shall be deleted in its entirety from section 6 of the Distribution Agreement after the word "Television": "20%* Subject to terms in Section 9(d) below."

6. Section 9(d) of the Distribution Agreement shall be deleted in its entirety.

7. Section 9(e) of the Distribution Agreement shall be deleted in its entirety.

In all other respects, the Agreement is hereby ratified and confirmed.

Very truly yours,

Genius Products, LLC

By: _____
Its: _____
Date: _____

ACCEPTED AND AGREED

Grodfilm Corporation

By: _____
Its: _____Pres_____
Date: ___June 25, 2008___

Grodfilm Dist Agmt Amendment 4 v1 6.16.08

# EXHIBIT "C"

# SERVICES JURIDIQUES CLAIRE BENOÎT INC.

## CLAIRE BENOÎT LEGAL SERVICES INC.

Via Messenger

Montréal, May 31, 2007

Mr. James Fagen
GENIUS PRODUCTS, LLC
2230 Broadway
Santa Monica, CA 90404

Re : Snow Demon

Dear Sir,

Please find enclosed, for your records, a fully signed Acknowledgement of Irrevocable Authority in respect of the Notice of Irrevocable Authority sent to you by Grodfilm Corporation on April 24, 2007.

Best regards,

CLAIRE BENOIT LEGAL SERVICES INC.

Per:

Claire Benoît

Cc:     Mr. Dan Grodnik, Grodfilm Corporation
        Mr. Richard Iott, Braeburn Holdings, Ltd.

Encl.

Notice of Irrevocable Authority

Dated as of April 24, 2007

Genius Products, LLC
2230 Broadway
Santa Monica, CA  90404

Gentlemen:

Reference is made to that certain Distribution Agreement dated as of May 10, 2006 ("Agreement") between Grodfilm Corporation ("Licensor") and Genius Products, LLC, successor in interest to Genius Products, Inc. ("Genius").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, subject to the terms and conditions of said Agreement, Genius is hereby irrevocably authorized and directed by Licensor to pay to Braeburn Holdings, Ltd. ("Braeburn") the Advance (as such term is defined in the Agreement), with such payments to be made in the amounts and at the times otherwise payable to Licensor pursuant to the terms of the Agreement for the Picture tentatively entitled "Snow Demon."

The Advance shall be payable to Braeburn at:

| | |
|---|---|
| Bank: | Fifth Third Bank, Cincinnati, Ohio |
| Account Name: | Braeburn Holdings, Ltd. |
| Routing Number: | 042000314 |
| Account Number: | 80546499 |

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, subject to the terms and conditions of said Agreement, Genius is hereby irrevocably authorized and directed by Licensor to pay to the following collection account the Gross Receipts (as such term is defined in the Agreement) coming to Licensor pursuant to the Agreement (the "Net Receipts"), with such payments to be made in the amounts and at the times otherwise payable to Licensor pursuant to the terms of the Agreement for the Picture.

The Net Receipts shall be payable to:

| | |
|---|---|
| Bank: | National Bank of Canada 600 de la Gauchetière, Ground Floor, Montréal, Québec. |
| Account Name: | Grodfilm Corporation |
| Routing Number: | ABA 02-1-000021 |
| Bank No.: | 006 |
| Transit Number: | 19911 |
| Account Number: | 00-613-80 |

Snow Demon – Notice of Irrevocable Authority

Mar 20 09 04:24p        Richard B. Iott                          419.878.2170                          p.6

Very truly yours,

Geodilus Corporation

By: _____

Its: _____

ACCEPTED AND AGREED

Branburn Holdings, Ltd.

By: _____

Its: _____

Snow Down — Notice of Irrevocable Authority

# EXHIBIT "D"

Mar 20 09 04.23p       Richard B. Tott                            419.878.2170                          p.3

Acknowledgement of Notice of Irrevocable Authority

Dated as of April 24, 2007

Braeburn Holdings, Ltd.
5245 Keener Road
Monclova, OH 43542-9453

Gentlemen:

Genius Products, LLC, successor in interest to Genius Products, Inc. ("Genius") hereby acknowledges receipt from Grodfilm Corporation ("Licensor") of a Notice of Irrevocable Authority dated as of April 24, 2007 (the "Notice"). Said Notice relates, among other things, to certain payments due to Licensor pursuant to that certain Distribution Agreement dated as of May 10, 2006 as same may have been amended, extended, modified and/or revised from time to time (the "Agreement").

Genius agrees, subject to the express reservations herein contained, to pay to Braeburn Holdings, Ltd. ("Braeburn") the Advance (as such term is defined in the Agreement) for the Picture entitled "Snow Demon" at such time and in such amount as otherwise payable to Licensor pursuant to the terms of the Agreement provided that Licensor shall remain liable to Genius to perform all of its obligations pursuant to the Agreement, and provided further and subject to the express condition that nothing herein contained will obligate or require Genius to do or perform any act in derogation of or prejudicial to its own rights and interest under said Agreement or which will adversely affect or minimize, or be in conflict with any lien, security or right, title and interest which Genius may have, or possess, or acquire under said Agreement, and that said rights of Genius under said Agreement shall at all times be prior and superior to the rights conveyed by Licensor to Braeburn under said Notice. In the event any claim relating to the Advance payable to Braeburn hereunder is made by any other person or entity, Braeburn specifically agrees that Genius shall have the right to withhold any payments due to Braeburn hereunder until such claim is resolved.

Licensor expressly acknowledges that payment of the Advance by Genius to Braeburn shall satisfy Genius' obligation pursuant to section 5 of the Agreement.

Braeburn expressly acknowledges that it will not interfere with the enjoyment by Genius of its rights pursuant to the Agreement.

Should any legal proceeding relating to the amount payable hereunder be commenced against Genius, Genius may interplead Licensor and Braeburn as parties into such proceeding, that Braeburn will be subject to the jurisdiction of such court or tribunal before which the proceeding is commenced, that any determination of such court or tribunal will be binding on Braeburn, and that should said court or tribunal order Genius to pay any monies due Braeburn hereunder to any other entity, Genius may do so without any liability.

Licensor and Braeburn each agree to indemnify, defend, and hold harmless Genius from and against any liability in connection with the payment of the Advance hereunder.

Without limiting the generality of anything contained in the Agreement, Genius shall have against Braeburn all rights of counterclaim, withholding, set-off, deduction and/or defenses relating to

any payments made or required to be made by Genius pursuant to the terms of the Agreement, or that Genius may have against Licensor pursuant to this Acknowledgement, or that arise from any claim made by a third party.

Nothing herein contained shall be deemed or construed to prevent or preclude Genius from amending, extending, modifying and/or revising any of the provisions of the Agreement referred to in said Notice in any respect or to any extent whatsoever as to which the parties of said Agreement may mutually agree.

Very truly yours,

Genius Products, LLC

By: _____

Its: _____


ACCEPTED AND AGREED

Braeburn Holdings, Ltd.

By: _____

Its: _____


ACKNOWLEDGED AND AGREED TO:

Grodfilm Corporation

By: _____

Its: _____pres_____

5/4/07

# EXHIBIT "E"

Notice of Irrevocable Authority

Dated as of September 24, 2007

Genius Products, LLC
2230 Broadway
Santa Monica, CA 90404

Gentlemen:

Reference is made to that certain Distribution Agreement dated as of May 10, 2006 ("Agreement") between Grodfilm Corporation ("Licensor") and Genius Products, L.L.C. successor in interest to Genius Products, Inc. ("Genius"), as such Agreement was amended bearing date of October 17, 2007.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, subject to the terms and conditions of said Agreement. Genius is hereby irrevocably authorized and directed by Licensor to pay to The "House Next Door" Joint Venture (the "Lender") in the following collection account (the "Collection Account") the Advance and all Net Receipts (as such terms are defined in the Agreement), with such payments to be made in the amounts and at the times otherwise payable to Licensor pursuant to the terms of the Agreement for the Picture tentatively entitled *House Next Door* (the "Picture")

| | |
|---|---|
| Bank: | National Bank of Canada 600 de la Gauchetière, Ground Floor. Montréal, Quebec. Attention: Caroline Brault |
| Account Name : | 6287824 Canada Inc. "House Next Door" film |
| Transit Number: | 19911 |
| Account Number: | 52-148-29 |

Very truly yours,

Grodfilm Corporation

By: _____
    Dan Grodnik

Its:   President


ACCEPTED AND AGREED

The "House Next Door" Joint Venture

By: _____
    Eric Gozlan, for 6287824 Canada Inc. d/b/a Reel Entertainment
Its:   Managing Member


House Next Door   Notice of Irrevocable Authority

# EXHIBIT "F"

<u>Acknowledgement of Notice of Irrevocable Authority</u>

Dated as of _____, 2007

**THE «HOUSE NEXT DOOR» JOINT VENTURE**
through its managing member 6287824 Canada Inc. d/b/a
REEL Entertainment
2348 Lucerne road, suite 629
Montreal, Quebec H3R 2J8

Gentlemen:

Genius Products, LLC, successor in interest to Genius Products, Inc. ("Genius") hereby acknowledges receipt from Grodfilm Corporation ("Licensor") of a Notice of Irrevocable Authority dated as of September 24, 2007 (the "Notice"). Said Notice relates, among other things, to certain payments due to Licensor pursuant to that certain Distribution Agreement dated as of May 10, 2006 as same may have been amended, extended, modified and/or revised from time to time (the "Agreement").

Genius agrees, subject to the express reservations herein contained, to pay to The "House Next Door" Joint Venture (the "Lender") the Advance (as such term is defined in the Agreement) at such time and in such amount as otherwise payable to Licensor pursuant to the terms of the Agreement provided that Licensor shall remain liable to Genius to perform all of its obligations pursuant to the Agreement, and provided further and subject to the express condition that nothing herein contained will obligate or require Genius to do or perform any act in derogation of or prejudicial to its own rights and interest under said Agreement or which will adversely affect or minimize, or be in conflict with any lien, security or right, title and interest which Genius may have, or possess, or acquire under said Agreement, and that said rights of Genius under said Agreement shall at all times be prior and superior to the rights conveyed by Licensor to the Lender under said Notice. In the event any claim relating to the Advance payable to the Lender hereunder is made by any other person or entity, the Lender specifically agrees that Genius shall have the right to withhold any payments due to the Lender hereunder until such claim is resolved.

Licensor expressly acknowledges that payment of the Advance by Genius to the Lender shall satisfy Genius' obligation pursuant to section 5 of the Agreement.

Genius agrees, subject to the express reservations herein contained, to pay to the Collection Account at National Bank of Canada, as more fully described in the Notice, the Net Receipts (as such term is defined in the Agreement) enuring to Licensor pursuant to the Agreement at such time and in such amount as otherwise payable to Licensor pursuant to the terms of the Agreement provided that Licensor shall remain liable to Genius to perform all of its obligations pursuant to the Agreement, and provided further and subject to the express condition that nothing herein contained will obligate or require Genius to do or perform any act in derogation of or prejudicial to its own rights and interest under said Agreement or which will adversely affect or minimize, or be in conflict with any lien, security or right, title and interest which Genius may have, or possess, or acquire under said Agreement, and that said rights of Genius under said Agreement shall at all times be prior and superior to the rights conveyed by Licensor to the Lender under said Notice. In the event any claim relating to the Advance payable to the Lender hereunder or relating to the Net Receipts payable to said Collection Account, is made by any other person or

entity, the Lender specifically agrees that Genius shall have the right to withhold any payments due to the Lender hereunder until such claim is resolved.

Licensor expressly acknowledges that payment of the Net Receipts by Genius to said Collection Account shall satisfy Genius' obligation pursuant to section 6 of the Standard Terms and Conditions of the Agreement.

The Lender expressly acknowledges that it will not interfere with the enjoyment by Genius of its rights pursuant to the Agreement.

Should any legal proceeding relating to the amount payable hereunder be commenced against Genius, Genius may interplead Licensor and the Lender as parties into such proceeding, that the Lender will be subject to the jurisdiction of such court or tribunal before which the proceeding is commenced, that any determination of such court or tribunal will be binding on the Lender, and that should said court or tribunal order Genius to pay any monies due the Lender hereunder to any other entity, Genius may do so without any liability.

Licensor and the Lender each agree to indemnify, defend, and hold harmless Genius from and against any liability in connection with the payment of the Advance and the Net Receipts hereunder.

Without limiting the generality of anything contained in the Agreement, Genius shall have against the Lender all rights of counterclaim, withholding, set-off, deduction and/or defenses relating to any payments made or required to be made by Genius pursuant to the terms of the Agreement, or that Genius may have against Licensor pursuant to this Acknowledgement, or that arise from any claim made by a third party.

Nothing herein contained shall be deemed or construed to prevent or preclude Genius from amending, extending, modifying and/or revising any of the provisions of the Agreement referred to in said Notice in any respect or to any extent whatsoever as to which the parties of said Agreement may mutually agree.

Very truly yours,

Genius Products, LLC

By: _Christine L Martiny_
Its: _EVP | General Mgr._

ACCEPTED AND AGREED

The "House Next Door" Joint Venture

By: _[signature]_
    Eric Gozlan, for 6287824 Canada Inc.
    d/b/a Reel Entertainment
Its:   Managing Member

ACKNOWLEDGED AND AGREED TO:

Grodfilm Corporation

By: _[signature]_
    Dan Grodnik
Its: President

House Next Door – Acknowledgement of Notice of Irrevocable Authority

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV09- 2738 GW (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAEBURN HOLDINGS, LLC. an Ohio LLC;<br>*See Attached —*<br>PLAINTIFF(S)<br>v.<br>GENIUS PRODUCTS, LLC, a Delaware Limited<br>Liability Company; and DOES 1 through 10,<br>inclusive,<br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-02738   GW   (CWx)**<br><br>**SUMMONS** |

TO:   DEFENDANT(S):  <u>GENIUS PRODUCTS, LLC</u>

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Hamrick & Evans, LLP</u>_____, whose address is <u>111 Universal Hollywood Dr., #2200, Universal City, CA 91608</u>_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __**APR 2 0 2009**_____

By: _____**LA'REE HORN**_____

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1192

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
BRAEBURN HOLDINGS, LLC. an Ohio Limited Liability Company; 6287824
CANADA, INC., DBA REEL ENTERTAINMENT, a Canadian Corporation

**DEFENDANTS**
GENIUS PRODUCTS, LLC, a Delaware Limited Liability Company; and
DOES 1 through 10, inclusive.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

HAMRICK & EVANS, LLP; 111 Universal Hollywood Drive, Suite 2200,
Universal City, California 91608, Telephone: (818) 763-5292

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No       ☑ **MONEY DEMANDED IN COMPLAINT:** $ excess of $5000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332 and 28 U.S.C. § 1367. Plaintiffs seek recovery of amounts due arising out of a contract dispute.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions |  |  | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land |  |  |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   **CV09-02738**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)        CIVIL COVER SHEET        Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　 ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　 ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　 ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| BRAEBURN HOLDINGS, LLC / REEL ENTERTAINMENT | Ohio / Canada |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| GENIUS PRODUCTS, LLC - Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
　　Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date April 20, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors insurance benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |